**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

```
-------------------------------------------------------------x
CONSOLIDATED BURGER HOLDINGS, LLC    :
a Delaware Limited Liability Company, :
CONSOLIDATED BURGER B, LLC,          :
A Delaware Limited Liability Company, :
                                     :
        Plaintiff,                   :
                                     :
v.                                   :
                                     :
BURGER KING CORPORATION,             :
A Florida Corporation,               :
                                     :
        Defendant.                   :
-------------------------------------------------------------x
```

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiffs, CONSOLIDATED BURGER HOLDINGS, LLC ("CBH") and CONSOLIDATED BURGER B, LLC ("CBB" and collectively, "Plaintiffs"), by and through undersigned counsel, hereby sue Defendant, BURGER KING CORPORATION (hereinafter, "BKC"), and in support thereof, states as follows:

**Parties, Jurisdiction and Venue**

1.      Plaintiff, Consolidated Burger Holdings, LLC, is a Delaware limited liability company having its principal place of business at 4477 Legendary Drive, Suite 1, Destin, Florida 32541.

2.      Plaintiff, Consolidated Burger B, LLC, is a Delaware limited liability company having its principal place of business at 4477 Legendary Drive, Suite 1, Destin, Florida 32541.

3.      Defendant, Burger King Corporation ("BKC"), is a Florida corporation with its principal place of business located at 5707 Waterford District Drive, Miami, Florida 33126.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The parties are citizens of different states and the matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

5.      Venue is appropriate in this District under 28 U.S.C. §1391(b)(1) based on the residence of BKC. Venue is also appropriate in this District.

<u>**General Allegations**</u>

**A.      CBH and Its Affiliate(s) Join the BKC Franchise System**

6.      In 2018, BKC was looking for a large financially and operationally qualified group to acquire from an existing franchisee a portfolio of approximately sixty-six (66) underperforming BK restaurants throughout Florida and Georgia.  These restaurants were in a severe financial decline due to poor operations and a lack of capital approvements.

7.      Given the condition of the restaurants and the remodeling requirements, Plaintiffs were hesitant to pursue this opportunity.  BKC was heavily motivated to remove the franchisee that owned these locations.  In order to do so and given CBH's wealth of industry experience and business acumen that would ultimately enable CBH to turn around the failing stores resulting in a mutual benefit to BKC and CBH, BKC ramped up its efforts to convince Plaintiffs to acquire this portfolio of restaurants.

8.      On May 16, 2018, and in order to entice Plaintiffs to agree to acquire underperforming restaurants, BKC' North America Franchising & Business Development representative, Mr. Tom Corbolotti, expressly represented to CBH's representatives that the cost to do a mid-term refresh remodel was only thirty thousand dollars ($30,000.00) per restaurant. This, in turn, translated to a cost of approximately one million nine hundred eighty thousand dollars ($1,980,000) to perform a mid-term refresh remodel on all sixty-six (66) restaurants.

BKC, through Mr. Corbolotti, accomplished its goal.

9.      On or about June 1, 2018, in reliance on the express representations made by Mr. Corbolotti, BKC, CBH, as Area Developer and CBB's affiliated entity and Parent CBH, as Principal 1, entered into an Area Development and Remodeling Agreement ("2018 Remodeling Agreement") pursuant to which Area Developer acquired sixty-six (66) under-performing BK Restaurants for the sum of forty-five and one-half million dollars ($45,500,000.00).[1] The 2018 Remodeling Agreement was scheduled to expire on November 30, 2024.

10.      Based on Mr. Corbolitti's express representation regarding the nominal mid-term refresh remodel cost, reasonable remodel requirements and incentives provided by BKC in the 2018 Remodeling Agreement as part of the overall transaction, CBH, as Area Developer agreed to, among other things, complete full remodels of fourteen (14) of its restaurants between 2018 and 2020.[2]  Unbeknownst to CBH's representatives at the time, the restaurants were in even worse physical shape than they anticipated.

11.      Indeed, during the first nine months of ownership, Plaintiffs had no choice but to expend almost an additional four million dollars ($4,000,000.00) in emergency repairs and replacement of critical equipment. Under CBH's direction, the restaurants slowly started to generate an increase in sales.

**B.      CBB's Execution of Franchise Agreements**

12.      On or about June 1, 2018, and as part of the acquisition of the portfolio of BK Restaurants, BKC and CBB executed a Franchise Agreement pursuant to which CBB acquired

---

[1] CBB, through its affiliate, eventually acquired six (6) additional BK restaurants in Georgia, built an additional seven (7) restaurants, and closed four (4) underperforming restaurants, bringing its total portfolio to seventy-five (75) locations.

[2] As relevant to this action, BK #82 and #17461 were on the remodel list with remodel deadlines of November 30, 2018 and November 30, 2020, respectively. BK #9360 and #3697 had a remodel deadline of December 12, 2023 and March 31, 2024, respectively.

the right to own and operate BK #82, located at 3796 Congress Avenue, South Lake Worth, FL 33461.[3]  The Franchise Agreement is scheduled to expire on September 18, 2032.

13.     Simultaneous with the Franchise Agreement, and as part of the requirements of the 2018 Remodeling Agreement, BKC and CBB executed the Deferred Remodel Addendum to Franchise Agreement. As reflected in Paragraph 2 of the Deferred Remodel Addendum, CBB's original deadline to remodel BK #82 was November 30, 2018.

14.     On or about June 1, 2018, BKC and CBB also executed a Franchise Agreement pursuant to which CBB acquired the right to own and operate BK #17461, located at 1760 S. Military Trail, West Palm Beach, FL 33415.  The Franchise Agreement is scheduled to expire on September 29, 2029.

15.     Simultaneous with the Franchise Agreement, and as part of the requirements of the 2018 Remodeling Agreement, BKC and CBB executed the Deferred Remodel Addendum to Franchise Agreement. As stated in Paragraph 2 of the Deferred Remodel Addendum, CBB's original deadline to remodel BK #17461 was November 30, 2020.

16.     CBB also assumed Burger King Holding Company's ("BKHC") obligations under the September 18, 2012 Franchise Agreement pursuant to which BKHC was granted the right to own and operate BK #9360, located at 1721 Belvedere Road, West Palm Beach, FL 33406.  This Franchise Agreement is scheduled to expire on December 12, 2023.

17.     As of today, CBB continues to operate BK #9360 pursuant to the terms contained in the underlying Franchise Agreement.

18.     CBB also assumed BKHC's obligations under another September 18, 2012 Franchise Agreement pursuant to which BKHC was granted the right to own and operate BK

---

[3] A copy of the Franchise Agreement and Deferred Remodel Addendum for BK #82 is annexed hereto as **Exhibit "A."**  As the other franchise agreements are identical in all material aspects, CBB is not annexing each franchise agreement.  Should the Court wish to review all of them, CBB will provide same.

#3697, located at 8175 Glades Road, Boca Raton, FL 33424. This Franchise Agreement was initially scheduled to expire on May 20, 2023.

19.     CBB continues to operate BK #3697 pursuant to the terms contained in the underlying Franchise Agreement.[4]

20.     On or about October 23, 2018, and after expressly representing to CBH that a mid-term refresh remodel only cost thirty thousand dollars ($30,000) per restaurant, Mr. Corbolotti advised CBH that BKC implemented a new remodel image and remodel requirements, i.e., the Burger King of Tomorrow ("BKoT") standard.  Rather than spend approximately ten million dollars ($10,000,000) over a period of ten (10) years that CBH had planned to invest when it made to decision to acquire the portfolio of BK restaurants, CBH was now required to spend approximately twenty-three million dollars ($23,000,000) to remodel the same restaurants under the new BKoT standards.[5]

21.     BKC now demanded that CBH also remodel additional stores separate and apart from what had been agreed to as part of the 2018 Remodeling Agreement.  As such, BKC's demands now required CBH to spend approximately thirty million dollars ($30,000,000) for restaurant remodels over the same ten (10) period.

22.     Given Mr. Corbolotti's prior express representation regarding the low costs associated with a remodel, BKC's new remodeling costs materially changed the terms of the 2018 Remodeling Agreement.  Had CBH known that BKC intended to materially change the remodel requirements within a few months of the parties' execution of the 2018 Remodeling Agreement, CBH would never have invested millions of dollars into the BKC franchise system. CBH was now forced to seek a solution to this dilemma.

---

[4] Among others, BKC's affiliate is the landlord for BK #82, #17461, #9360 and #3697.

[5] The amount reflected herein is net of BKC's incentives.

**C.    CBH Executes Remodel Agreement, Which Terminates 2018 Remodeling Agreement**

23.    On December 5, 2019, and following several months of negotiations, CBH and BKC entered into a Remodel Agreement pursuant to which BKC now identified eleven (11) restaurants that CBH had to remodel from 2020 through 2022 ("2019 Remodel Agreement").[6]

24.    The term of the 2019 Remodel Agreement was from December 5, 2019 through December 31, 2021.

25.    Among others, t\he 2019 Remodel Agreement contains the following key provisions:

**1.    <u>Restaurants, Remodel and Refresh Deadlines</u>**.

(a)    **Remodels**.    Franchisee shall successfully conclude a BKOT Remodel of each of the eleven (11) Restaurants in accordance with the schedule set forth on Exhibit A ("Cumulative Remodel Target"). Each Restaurant shall be remodeled to one of the Full BKOT Remodel, BKOT Upgrade Remodel or BKOT Drive-Thru and Digital Upgrade (each as defined below) as set forth on the chart of Exhibit A. Exhibit B sets forth the Restaurants which are hereby granted an extension of their original required deadline under their applicable Franchise Agreement.  The new remodel deadline for such Restaurants is also set forth on Exhibit B.

**3.    <u>Pre-Inspections</u>**.    BKC shall conduct inspections of the Restaurants specified to be remodeled during any given year, and shall issue Facility Inspection Reports ("FIRs") to Franchisee. . . . For purposes of this Remodel Agreement, including but not limited to, determining the extent of a BKOT Remodel and the successful completion thereof, the final FIRs issued by Global Business Services shall control.

**11.    <u>Miscellaneous</u>**.

(g)    **<u>Entire Agreement</u>**.  The above recitals are hereby made a part of this Remodel Agreement. All exhibits and all documents and other papers included as part of any exhibits to this Remodel Agreement are hereby incorporated into this Remodel Agreement by reference. This Remodel Agreement, including the exhibits, supersedes any previous agreements, understandings, or arrangements between the parties relating to the subject matter

---

[6] A copy of the 2019 Remodel Agreement is annexed hereto as **Exhibit "B."**

hereof, and sets forth the entire understanding between the parties relating to such subject matter, there being no terms, conditions, warranties or representations other than those contained herein.

(k) **Business Reviews**. Franchisee and BKC shall meet at a minimum on a quarterly basis to conduct a business review meeting which shall include a review of the financial and operational performance of Franchisee. Notwithstanding the foregoing, BKC may, at its option, request that the Franchisee provide materials which BKC believes are relevant for any such business review and following its receipt of such materials, BKC may, in its sole discretion, waive any business review meeting. In 2021, Franchisee and BKC shall meet to conduct a full business and financial review to determine long term planning which will include a mutually agreed upon remodel plan for 2022 and thereafter.

(l) **Prior Agreement**. The Area Development and Remodeling Agreement ("The ADA") among BKC, Franchisee, Parent Consolidated Burger Holdings, LLC and Lee M. Baugher dated June 1, 2018 is hereby terminated as of the date hereof.

*See* Exhibit "B."

26.     As reflected on Exhibit B to the 2019 Remodel Agreement, BKC modified the remodel dates from what was reflected on the 2018 Remodeling Agreement.  Specifically, BK #82's remodel date was extended from **November 30, 2018** to **2020** while BK #17461's remodel date was modified from **November 30, 2020** to **2022**.

27.     BK #9360 and #3697 were no longer part of the restaurants to be remodeled. Since Paragraph 11(f) of the 2019 Remodel Agreement terminated the 2018 Remodeling Agreement, CBB's obligation to remodel these two (2) locations lapsed.

28.     From the time of the parties' execution of the 2019 Remodel Agreement through the end of February 2020, BKC failed to perform under the 2019 Remodel Agreement.  Among other things, BKC failed to issue any FIRs in connection with a single remodel.

**D.     COVID-19 Pandemic Hits the United States**

29.     In or about March 2020, and within a few months of the parties' execution of the

2019 Remodel Agreement, BKC's parent company, Restaurant Brands International, Inc. ("RBI") issued a webcast to its franchisees stating that it would be "[p]ostponing all Burger King of Tomorrow ("BKoT") remodels including any agreements in our BKOT incentive program as well as any successors that are coming due" so that franchisees could preserve liquidity.

30.     On September 9, 2020, RBI confirmed that all BKOT remodels and mid-term remodels due in 2020 were deferred to September 30, 2021.  In other words, CBB's remodel deadline for BK #82 was now pushed back to September 30, 2021.  As to BK #17461, given that the 2019 Remodel Agreement was set to expire on December 31, 2021 with no renewal of same, there was no firm remodel date, much less an affirmative obligation to remodel, in place.

31.     Indeed, following this announcement and moving into 2021, BKC failed to conduct a full business and financial review with CBH's representatives to go over long-term planning, including a mutually acceptable remodel schedule for 2022 and moving forward.  Had BKC conducted a full business and financial review with CBH's representatives, the parties could have discussed, among other things, if there was any obligation to remodel BK #17461. Thereafter, the 2019 Remodel Agreement expired effective December 31, 2021.

**E.     BKC Seeks to Impose Draconian Business Terms**

32.     The 2019 Remodel Agreement expired on its own terms effective December 31, 2021. Prior to such expiration, BKC failed to conduct the contractually obligated business and financial review with CBH's representatives. As such, commencing late fall of 2022, BKC had no choice but to commence a dialogue with CBH's representatives regarding the parties' relationship moving forward.  Among such discussions was CBH's remodel obligations of its portfolio of BK restaurants, proposed dates of same, incentives to be provided by BKC, etc.

33.     In early 2023, BKC ultimately presented to CBH and its affiliates what is called a

Reclaim the Flame Master Program Agreement ("Reclaim the Flame Agreement") under which CBB was offered the opportunity to earn incentives in exchange for completing the specified Reclaim the Flame remodel of certain restaurants. From the original list of restaurants, and as it pertains to this dispute, BKC proposed a remodel date of December 31, 2024 for BK #82, #17461 and #3697. BK #9360 had a proposed remodel date of December 31, 2023. There were also other five (5) other restaurants identified on the Reclaim the Flame Agreement.

34. After BKC provided the Reclaim the Flame Agreement to CBB, the parties eventually engaged in telephone conversations and meetings to discuss the terms contained in the Reclaim the Flame Agreement. The discussions and meetings led to the exchange of term sheets between May/June 2023 pursuant to which CBB generally agreed to BKC's proposed terms regarding the restaurants to be remodeled, the dates of the remodels, the incentives to be provided by BKC, the proposed stores to be closed, etc.

35. Unfortunately, such discussions slowed down when BKC also imposed additional onerous terms that were not contemplated within the four corners of the Reclaim the Flame Agreement or any other agreement between the parties. Among the terms that BKC tired to impose upon CBB that were not part of the proposed Reclaim the Flame Agreement were: (i) restructuring of CBB, CBH and its affiliates debt structure with their lenders, with a failure to do so resulting in a substantial increase in the royalty fee during the middle of each franchise term; (ii) increase in the current corporate guaranty from approximately five million dollars ($5,000,000) to an astronomical nineteen million dollars ($19,000,000); (iii) a modified debt to EBITDA ratio; (iv) restriction on any dividend payments to its investors.

36. In other words, in additional to being CBB's franchisor, supplier and landlord for certain BK restaurants, BKC now sought to: (i) dictate the terms of CBH's debt financing; (ii)

financial operating ratios; (iii) lease operating ratios; (iv) CBH's distribution of dividends to its investors; and (v) increase of current corporate guaranty.  Notwithstanding BKC's tactics, CBH, in good faith, continued with such negotiations by striking the objectionable terms and agreeing to the remodeling terms for its restaurants.

37.     BKC continued to demand that CBH agree to terms that were not part of any agreement between the parties and advised CBH that if it did not agree to the increased corporate guaranty, among other terms, BKC intended to part ways with CBH and the franchisor-franchisee relationship between. Indeed, BKC retained its former employee, Jose Padilla ("Padilla"), to continue such discussions which essentially were nothing more than an attempt by Padilla, on behalf of BKC, to strong arm CBH to agree to BKC's onerous terms.  Padilla went so far as to state that absent CBH's agreement to BKC's terms, BKC intended to default and terminate CBH and its affiliate entities' franchise rights. No deal was ultimately consummated.

**F.     BKC Issues Notices of Remodel Default and Notices of Non-Successor of Burger King Restaurants**

38.     True to form, on September 11, 2023, in order to gain leverage over CBB in the hopes to force it out of the BKC franchise system, BKC issued a Notice of Default for BK #82 and BK #17461, respectively.[7]

39.     The Notice of Default for BK #82 provides, in pertinent part, as follows:

> Notice is hereby given that Franchisee is currently in DEFAULT under the terms and conditions of **Section 18(A)(6)** of the Franchise Agreement for failure to make all improvements, alterations or remodelings as may be determined by BKC to be reasonably necessary to reflect BKC's current image.  Specifically, Franchisee failed to meet the November 30, 2018, Remodel Completion Date set forth in Section 2 of the Deferred Remodel Addendum in the Franchise Agreement (the "Remodel Default").

*See* Exhibit "C."

---

[7] A copy of the Notice of Remodel Default for BK #82 and BK #17461 is annexed hereto as **Exhibits "C"** and **"D,"** respectively.

40.     BKC glosses over the fact that the 2019 Remodel Agreement superseded the Deferred Remodel Addendum and extended the deadline for a remodel of BK #82 from **November 30, 2018 to 2020**.  This date eventually got pushed to September 30, 2021 given the COVID-19 pandemic that hit in 2020.

41.      CBB's remodel obligation was subject to Paragraph 3 of the 2019 Remodel Agreement, i.e., BKC's inspection of the Restaurant and the subsequent issuance of a Facility Inspection Report ("FIR").  By failing to comply with the express requirements set forth in Paragraph 3 of the 2019 Remodel Agreement, BKC breached same and, in the process, prevented CBB from moving forward with its obligations.

42.     The Notice of Default for BK #17461 provides, in pertinent part, as follows:

> Notice is hereby given that Franchisee is currently in DEFAULT under the terms and conditions of **Section 18(A)(6)** of the Franchise Agreement for failure to make all improvements, alterations or remodelings as may be determined by BKC to be reasonably necessary to reflect BKC's current image.  Specifically, Franchisee failed to meet the November 30, 2020, Remodel Completion Date set forth in Section 2 of the Deferred Remodel Addendum in the Franchise Agreement (the "Remodel Default").

43.     Similar to BK #82, the 2019 Remodel Agreement superseded the Deferred Remodel Addendum and extended the remodel deadline for BK #17461 from **November 30, 2020** to **2022**.  Given that the 2019 Remodel Agreement expired on December 31, 2021 prior to CBB's obligation to remodel same, CBB had no contractual obligation to remodel BK #17461.  To the extent that it had an obligation, BKC failed to issue an FIR in breach of Paragraph 3 of the 2019 Remodel Agreement and prevented CBB from moving forward with its obligations.

44.     Simultaneous with the Notice of Default for BK #82 and #17461, BKC issued a Notice Non-Successor of Burger King Agreements for BK #53, #2993, #2665, #3697 and #9360,

respectively.[8]

45.     The Notice of Non-Successor of Burger King Agreements for BK #3697 provides, in pertinent part, as follows:

> . . . The term of the Burger King Agreements expired as of May 20, 2023 (the "Term Expiration Date).
>
> \*          \*          \*          \*          \*
>
> Pursuant to Section 17.B.(4) of the Franchise Agreement, in order for the Franchisee to have the option to obtain a Successor Franchise Agreement, a remodel of the Restaurant to conform the premises to Burger King Company's ("BKC") current image must have been completed by no sooner than three (3) years and no later than three (3) months prior to the Term Expiration Date. The Franchisee has failed to complete such a remodel of the Restaurant.  Due to the Franchisee's non-compliance with this obligation under your Franchise Agreement, please be advised that BKC does not intend to offer the Franchisee a successor franchise for the Restaurant.  Accordingly, Franchisee has no right to renew or to obtain a Successor Franchise Agreement and must close the Restaurant on the thirtieth (30th) day following the date of delivery of this notice and comply with all applicable post-termination covenants of the Burger King Agreements.

*See* Exhibit "E."

46.     BKC's Notice is defective, without merit and of no force or effect. Specifically, under the 2018 Remodeling Agreement, which superseded the remodel dates set forth Franchise Agreement as expressly stated in Paragraph 9.7, BKC expressly stated that the remodel date for BK #3697 was March 31, 2024.  The 2019 Remodel Agreement, which terminated the 2018 Remodeling Agreement, did not require CBB to remodel BK #3697 and, in essence, terminated any remodel obligations for BK #3697.

47.     By refusing to issue a successor Franchise Agreement for BK #3697, BKC has

---

[8] A copy of the Notice of Non-Successor of Burger King Agreements for BK #3697 and BK #9360 is annexed hereto as **Exhibits "E"** and **"F",** respectively.  Because the other three (3) BK Restaurants that received a Notice of Non-Successor of Burger King Agreements are not at issue as CBB intends to close each location pursuant to the terms of the respective Franchise Agreements, CBB is not annexing those notices to the Complaint.

breached Paragraph 17 of the underlying Franchise Agreement.

48.    The Notice of Non-Successor of Burger King Agreements for BK #9360 provides, in pertinent part, as follows:

> . . . The term of the Burger King Agreements expire on December 12, 2023 (the "Term Expiration Date).

> *        *        *        *        *

> Pursuant to Section 17.B.(4) of the Franchise Agreement, in order for the Franchisee to have the option to obtain a Successor Franchise Agreement, a remodel of the Restaurant to conform the premises to Burger King Company's ("BKC") current image must have been completed by no sooner than three (3) years and no later than three (3) months prior to the Term Expiration Date. The Franchisee has failed to complete such a remodel of the Restaurant.  Due to the Franchisee's non-compliance with this obligation under your Franchise Agreement, please be advised that BKC does not intend to offer the Franchisee a successor franchise for the Restaurant.  Accordingly, Franchisee has no right to renew or to obtain a Successor Franchise Agreement and must close the Restaurant on the thirtieth (30th) day following the date of delivery of this notice and comply with all applicable post-termination covenants of the Burger King Agreements.

*See* Exhibit "F."

49.    This Notice of Non-Successor is also defective, without merit and of no force or effect. The 2018 Remodeling Agreement expressly provides that BK #9360 must be remodeled by December 12, 2023, as opposed to the date of expiration of the Franchise Agreement as suggested in the Notice of Non-Successor. Meanwhile, the 2019 Remodel Agreement terminated the 2018 Remodeling Agreement.

50.    The 2019 Remodel Agreement, however, did not require a remodel of BK #9360. As such, once the 2019 Remodel Agreement terminated the 2018 Remodeling Agreement, CBB's obligation to remodel lapsed. As such, BKC should have granted to CBB a successor Franchise Agreement pursuant to Paragraph 17 of the Franchise Agreement.  By failing to do so, BKC breached same.

51.     Following the issuance of the Notices of Remodel Default and Notices of Non-Successor of Franchise Agreements referenced above, Padilla continued dialogue with CHB and its affiliate entities' representatives to see if they were ready to consummate a deal. During such dialogue, Padilla pressed upon CBH's representatives that BKC not only intended to terminate BK #82 and 17461 but its legal department also ready to default an additional five (5) restaurants absent CBH and its affiliates' agreement to BKC's self-imposed one-sided deal terms.[9]

52.     Padilla went so far as to suggest to CBB's representatives that if CBB sought to purportedly losing the four (4) restaurants subject to Notices of Remodel Default and Notices of Non-Successor of Franchise Agreements, CBH and its affiliates must sell their entire portfolio of BK restaurants within approximately six (6) months. If CBH and its affiliates did not agree to abide by BKC's self-imposed timeline, BKC sought to terminate the franchise relationship.

53.     BKC's Notices of Default and Notices of Non-Successor of Burger King Restaurants are without basis and were issued in bad faith in order to try to prematurely force CBB out of the franchise system to its financial determent. As outlined herein, BKC committed material breaches of the underlying 2019 Remodel Agreement and its Notices of Default and Notices of Non-Successor of Burger King Restaurants should be rescinded.

54.     In short, notwithstanding the disruption caused by COVID-19, CBH and its affiliates invested millions of dollars in improvements to its BKC's restaurants, including but not limited to, the installation of outdoor digital menu boards, drive thru improvements, landscaping and exterior modifications.  CBH completed nine (9) full remodels, several upgrades and seven (7) new builds.  In total, CBH and its principals invested approximately thirty million dollars ($30,000,000) to acquire, improve, remodel, and repair its BK restaurants.

---

[9] To the extent BKC issues a notice of default and/or termination for the other restaurants, CBH and its affiliates reserve the right to amend this Complaint and include claims surrounding such notices.

55.     CBH and its affiliates have been extremely good business partners since the inception of the franchise relationship with BKC as reflected by CBH's "A" rating.  Indeed, between 2021 and 2022, CBH's sales grew at rate of 3.5% while the BK system as a whole had a decline of 0.5%.  During this same time period, CBH's store-level EBITDA averaged an improved 11.1% margin while the BK system's margin was slightly above 8.4%.

56.     Yet, BKC seeks to oust Plaintiffs from the BK franchise system by fabricating a claim based on CBB's alleged failure to remodel certain restaurants.  Indeed, the parties discussed and agreed upon remodel terms; however, BKC refused to engage in good faith negotiations by imposing roadblocks along the way and imposing conditions that are not a part of the proposed Reclaim the Flame Agreement or any other agreement between the parties.

57.     The same BKC sought to remove the prior franchisee in favor of CBH, BKC now seeks to drive CBH out of the BK system and get Plaintiffs' entire portfolio of BK restaurants into the hands of other naïve small owner/operators.[10]  The problem for franchisees, such as Plaintiffs, lies in the fact that BKC seeks to use its bargaining power to dictate who is permitted to purchase a franchisees' network of restaurants and at what price.  The franchisees, Plaintiffs in this case, have no say so in BKC's unscrupulous scheme other than to hope for the best.  This Court should not condone such behavior.

58.     All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

59.     As a result of BKC's wrongful conduct, and Plaintiffs' need to protect and enforce their legal rights, Plaintiffs have retained the undersigned attorneys and are obligated to pay attorneys' fees.  Pursuant to Florida law and Paragraph 21.I. of the underlying Franchise

---

[10] In its North America Franchise Approval and Expansion Policy issued on January 13, 2023 and in its public announcements, BKC has stated that it desires franchise ownership groups to have no more than fifty (50) restaurants.

Agreements, Plaintiffs seek to recover their attorneys' fees and costs from BKC.

## LEGAL CAUSES OF ACTION

### Count I – Declaratory Judgment

60.     CBB incorporates each and every allegation set forth in Paragraphs 1 through 59, *supra*, as if fully set forth herein.

61.     As reflected in Paragraphs 38 – 44, *supra*, BKC issued a Notice of Remodel for BK #82 and BK #17461 on September 11, 2023 on the basis that CBB failed to meet its remodel deadline of November 30, 2018 and November 30, 2020, respectively, as reflected in the Deferral Remodel Addendum for each location.

62.     CBB submits that the 2019 Remodel Agreement superseded the Deferred Remodel Addendum for each restaurant as reflected by Paragraph 11.(g) of the 2019 Remodel Agreement.  This, in turn, extended the remodel date for BK #82 from November 30, 2018 to 2020 while the remodel date for BK #17461 was extended from November 30, 2020 to 2022.

63.      For the reasons set forth in Paragraphs 38 – 44, *supra*, CBB's obligation to remodel both BK restaurants either expired and/or BKC prevented CBB from complying with same due to its failure to issue a FIR for both restaurants.

**WHEREFORE**, Plaintiff, Consolidated Burger B, LLC, respectfully requests that this Honorable Court enter an Order declaring as follows: (i) the 2019 Remodel Agreement superseded the Deferred Remodel Addendum for BK #82 and extended the remodel deadline from November 30, 2018 to 2020, which was later extended to September 30, 2021 given the COVID-19 pandemic; (ii) BKC failed to comply with the requirements of Paragraph 3 of the 2019 Remodel Agreement, which ultimately prevented CBB from undertaking a remodel of BK #82; (iii) the 2019 Remodel Agreement also superseded the Deferred Remodel Addendum for

BK #17461 and extended the remodel deadline from November 30, 2020 to 2022 and since the 2019 Remodel Agreement expired on December 30, 2021, CBB had no contractual obligation to remodel BK #17461; (iv) to the extent that CBB had an obligation to remodel BK #17461, BKC's failure to comply with Paragraph 3 of the 2019 Remodel Agreement ultimately prevented CBB from undertaking a remodel of BK #17461; and (v) BKC shall rescind the Notice of Remodel Default for BK #82 and #17461 and reinstate CBB into the BK franchise system as a franchisee in good standing.

### Count II – Breach of 2019 Remodel Agreement

64.     CBH incorporates each and every allegation set forth in Paragraphs 1 through 59, *supra*, as if fully set forth herein.

65.     BKC and CBH were parties to the 2019 Remodel Agreement, which was a valid and binding agreement between the parties.

66.     CBH fully complied with the terms of the 2019 Remodel Agreement and BKC accepted and retained the proceeds and benefits of the 2019 Remodel Agreement. Agreement.

67.     As set forth in Paragraphs 38 – 43, *supra*, BKC breached Paragraph 3 of the 2019 Remodel by failing to conduct inspections and issuing FIRs for BK #82 and #17461.

68.     As set forth in Paragraphs 29 – 31, *supra*, BKC breached Paragraph 11.(k) of the 2019 Remodel Agreement through its failure to conduct a full business and financial to determine long term planning that included a mutually agreed upon remodel plan for 2022 and thereafter.

69.     As a direct, proximate and foreseeable result of BKC's material breaches of the 2019 Remodel Agreement, CBH has suffered and continues to suffer substantial damages.

**WHEREFORE**, Plaintiff, Consolidated Burger B, LLC, respectfully requests that this

Honorable Court enter an Order in its favor and against Defendant, Burger King Corporation, for: (i) compensatory damages in an amount to be determined at trial; and (ii) such other and further relief as this Honorable Court deems just and proper.

**Count III – Breach of the Implied Covenant of Good Faith and Fair Dealing**

70.    CBH incorporates each and every allegation set forth in Paragraphs 1 through 59 and Paragraphs 65 - 69, *supra*, as if fully set forth herein.

71.    The 2019 Remodel Agreement and the relationship between CBH and BKC gives rise to a mutually implied covenant of good faith and fair dealing.  BKC had a duty to act in good faith and to fairly deal with CBH in carrying out the terms and provisions of the 2019 Remodel Agreement and was prohibited from engaging in arbitrary or unreasonable conduct that had the effect of preventing CBH from receiving the fruits of the 2019 Remodel Agreement.

72.    BKC breached the express and implied terms of the 2019 Remodel Agreement by acting arbitrarily, unreasonably and inconsistent with the reasonable expectations of the parties and by failing to exercise good faith in carrying out the terms of the 2019 Remodel Agreement.

73.    As a direct, proximate and foreseeable result of BKC's material breaches of its implied duty of good faith and fair dealing, CBH has suffered and continues to suffer substantial damages.

**WHEREFORE**, Plaintiff, Consolidated Burger B, LLC, respectfully requests that this Honorable Court enter an Order in its favor and against Defendant, Burger King Corporation, for: (i) compensatory damages in an amount to be determined at trial; and (ii) such other and further relief as this Honorable Court deems just and proper.

**Count IV - Breach of Franchise Agreements**

74.    CBB incorporates each and every allegation set forth in Paragraphs 1 through 59,

18

*supra*, as if fully set forth herein.

75.     Among others, BKC and CBB are parties to a Franchise Agreement for BK #3697 and another Franchise Agreement for BK #9360 (collectively, the "Franchise Agreements"), both of which are valid and binding Franchise Agreements between the parties.

76.     CBB has fully complied with the terms of the Franchise Agreements and BKC has accepted and retained the proceeds and benefits under the Franchise Agreements.

77.     As set forth in Paragraphs 44 – 50, *supra*, BKC breached Paragraph 17 of the Franchise Agreements by refusing to issue a successor Franchise Agreement for BK #3697 and #9360.

78.     As a direct, proximate and foreseeable result of BKC's material breaches of the Franchise Agreements, CBB has suffered and continues to suffer substantial damages.

**WHEREFORE**, Plaintiff, Consolidated Burger B, LLC, respectfully requests that this Honorable Court enter an Order in its favor and against Defendant, Burger King Corporation, for: (i) compensatory damages in an amount to be determined at trial; (ii) reasonable attorneys' fees, costs and interest; and (iii) such other and further relief as this Honorable Court deems just and proper.

### Count V – Breach of the Implied Covenant of Good Faith and Fair Dealing

79.     CBB incorporates each and every allegation set forth in Paragraphs 1 through 59 and 75 – 78, *supra*, as if fully set forth herein.

80.     The Franchise Agreements and the relationship between CBB and BKC gives rise to a mutually implied covenant of good faith and fair dealing.  BKC had a duty to act in good faith and to fairly deal with CBB in carrying out the terms and provisions of the Franchise Agreements and was prohibited from engaging in arbitrary or unreasonable conduct that had the

effect of preventing CBB from receiving the fruits of the Franchise Agreements.

81.     BKC breached the express and implied terms of the Franchise Agreements by acting arbitrarily, unreasonably and inconsistent with the reasonable expectations of the parties and by failing to exercise good faith in carrying out the terms of the Franchise Agreements.

82.     As a direct, proximate and foreseeable result of BKC's material breaches of its implied duty of good faith and fair dealing, CBB has suffered and continues to suffer substantial damages.

**WHEREFORE**, Plaintiff, Consolidated Burger B, LLC, respectfully requests that this Honorable Court enter an Order in its favor and against Defendant, Burger King Corporation, for: (i) compensatory damages in an amount to be determined at trial; (ii) reasonable attorneys' fees, costs and interest; and (iii) such other and further relief as this Honorable Court deems just and proper.

**Count VI – Anticipatory Breach of Franchise Agreements**

83.     CBB incorporates each and every allegation set forth in Paragraphs 1 through 59, *supra*, as if fully set forth herein.

84.     This is a cause for anticipatory breach of two (2) Franchise Agreements arising from BKC's threatened termination of the Franchise Agreement for BK #82 and #17461.

85.     Among others, BKC and CBB are parties to a Franchise Agreement for BK #82 and another Franchise Agreement for BK #17461 (collectively, the "Franchise Agreements"), both of which are valid and binding Franchise Agreements between the parties.

86.     As reflected in Paragraphs 38 – 43, *supra*, BKC has issued a Notice of Remodel Default for the Franchise Agreements, which remain outstanding as of today.

87.     BKC has threatened to terminate the Franchise Agreements and take away CBB's

right to operate the subject BK restaurants based on remodel defaults that BKC has fabricated in order to oust CBB from BKC system.

88.     As a direct, proximate and foreseeable result of BKC's material breaches of the Franchise Agreements, CBB will suffer substantial damages.

**WHEREFORE**, Plaintiff, Consolidated Burger B, LLC, respectfully requests that this Honorable Court enter an Order in its favor and against Defendant, Burger King Corporation, for: (i) compensatory damages in an amount to be determined at trial; (ii) reasonable attorneys' fees, costs, and interest; and (iii) such other and further relief as this Honorable Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, CONSOLIDATED BURGER HOLDINGS, LLC and CONSOLIDATED BURGER B, LLC, hereby demand a trial by jury under the laws of the State of Florida and the United States of America.

Respectfully submitted,

ZARCO EINHORN SALKOWSKI, P.A.
*Counsel for Plaintiffs*
One Biscayne Tower
2 S. Biscayne Blvd., Suite 3400
Miami, Florida   33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428

By:  /s/ Robert Zarco
        ROBERT ZARCO
        Florida Bar No. 502138
        E-mail: rzarco@zarcolaw.com
        HIMANSHU M. PATEL
        Florida Bar No. 0167223
        E-mail: hpatel@zarcolaw.com
        MICHAEL D. BRAUNSTEIN
        Florida Bar No. 1003845
        E-mail: mbraunstein@zarcolaw.com

21