**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-cv-24419-JEM

CONSOLIDATED BURGER HOLDINGS,
LLC, a Delaware Limited Liability
Company, CONSOLIDATED BURGER B,
LLC, A Delaware Limited Liability
Company,

      Plaintiffs,

v.

BURGER KING CORPORATION, A
Florida Corporation,

      Defendant.

_____/

## DEFENDANT BURGER KING COMPANY LLC'S MOTION FOR PRELMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW

Defendant and Counter-Plaintiff Burger King Company LLC ("BKC"), pursuant to Fed. R. Civ. P. 65 and S.D. Fla. L.R. 7.1, submits this Motion for Preliminary Injunction and Supporting Memorandum of Law requesting that this Court enjoin Counter-Defendants Consolidated Burger B, LLC ("CBB"), Consolidated Burger Holdings, LLC ("CBH"), Parent Consolidated Burger Holdings, LLC ("Parent CBH"), and Lee Baugher ("Baugher") (collectively, "Counter-Defendants") from willfully and unlawfully trading upon BKC's goodwill and reputation as a result of Counter-Defendants' pirating BKC's registered trademarks and service marks (the "Marks") in connection with the unlawful operation of certain restaurants as authorized BURGER KING® restaurants, and the continued display of the Marks at certain restaurants, subsequent to the termination or expiration of the parties' Franchise Agreements (as defined below).

## I.    INTRODUCTION

Counter-Defendants are the former franchise operators of BURGER KING® restaurants that are the subject of this action pursuant to certain franchise agreements between CBB and BKC. Despite that the franchise agreements were terminated or expired, Counter-Defendants continue to use the Marks in violation of law and the express terms of the parties' agreements. Unless immediately enjoined, Counter-Defendants will continue to pirate the Marks and BKC's reputation and goodwill, while perpetrating a fraud upon consumers who believe that the restaurants at issue are genuine BURGER KING® restaurants.

## II.    FACTUAL BACKGROUND

### A.    The Parties

BKC is engaged in the business of operating a worldwide system of company-owned and franchised BURGER KING® restaurants. Founded more than 65 years ago, BKC currently has approximately 20,000 franchised restaurants in the world. *See* (Ex. A, Schafer Decl. at ¶ 2).[1]

To identify the source, origin, and sponsorship of BKC's facilities, products, and services, BKC has extensively employed, caused to be advertised, and publicized throughout the United States certain distinctive symbols as trademarks and service marks, including "BURGER KING" and "HAVE IT YOUR WAY." (Ex. B, Griffith Decl. at ¶¶ 3-4).[2] BKC's extensive advertising and marketing of its restaurants, products, and services under the Marks has created widespread recognition and goodwill for its restaurants, products, and services. (*Id*.).

### B.    Jurisdiction and Venue

This Court has jurisdiction over this action based upon: (a)  Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1337, and 1338(a), for the claims arising out of Counter-

---

[1] The Declaration of Robin Schafer ("Schafer Decl.") is attached hereto as **Exhibit A**.
[2] The Declaration of Carleen Griffith ("Griffith Decl.") is attached hereto as **Exhibit B**.

Defendants' violations of Sections 32, and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, and 1125(a); (b) 28 U.S.C. § 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims of breach of contract and common law unfair competition.

Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 and the forum selection clause agreed to by the parties in their written agreements.

### C.    The Parties' Agreements

On or about June 1, 2018, Counter-Defendants acquired approximately 66 BURGER KING® restaurants from a prior BURGER KING® franchisee. (Ex. A, Schafer Decl. at ¶ 3); (Ex. C, Padoan Decl. at ¶ 2).[3] Four of those restaurants, BK #82, BK #2993, BK #3697, and BK #17461 (the "Restaurants") are the subject of this preliminary injunction.  (Ex. A, Schafer Decl. at ¶ 4); (Ex. C, Padoan Decl. at ¶ 3). As a result of the acquisition, CBB entered four (4) BURGER KING® franchise agreements, one for each location, pursuant to which CBB procured the right to own and operate the Restaurants as franchised BURGER KING ® restaurants using BKC's system and name, including service marks and trademarks, in accordance with the terms and conditions of BURGER KING® Franchise Agreements (collectively, the "Franchise Agreements"). (Ex. A, Schafer Decl. at ¶ 5); (Ex. C, Padoan Decl. at ¶ 4). A copy of the Franchise Agreement for BK #82 is attached as Exhibit "1" to the Schafer Decl.[4]

Moreover, CBH, Parent CBH, and Baugher irrevocably and unconditionally guaranteed the performance of each and every obligation of CBB under the Franchise Agreements, pursuant to a Conditional Consent to Assignment of Franchise Agreements and Leases dated June 1, 2018, as well as Owner Guarantees with respect to particular locations. (Ex. A, Schafer Decl. at ¶ 6). Copies of the Conditional Consent to Assignment of Franchise Agreements and Leases and the Owner Guarantees

---

3 The Declaration of Christopher Padoan ("Padoan Decl.") is attached hereto as **Exhibit C**.
4 BKC submits only one of the Franchise Agreements as they are the same in material respects with

are attached as Composite Exhibit "2" to the Schafer Decl.

### D. Counter-Defendants' Remodel Obligations and Deadlines Under the Agreements

Pursuant to the terms of the Franchise Agreements, Counter-Defendants were required to complete certain remodel obligations during the term of the Franchise Agreements as set forth therein. (Ex. A, Schafer Decl. at ¶ 7); (Ex. C, Padoan Decl. at ¶ 5). Those remodel obligations also included certain deadlines by which remodels of the Restaurants were to have taken place. (*Id*.).

Simultaneous with the execution of the Franchise Agreements for BK #82 and BK #17461, CBB also executed Deferred Remodel Addenda to the Franchise Agreements (each a "Deferred Remodel Addendum," and collectively the "Deferred Remodel Addenda") which modified certain remodel deadlines in the Franchise Agreements. (Ex. A, Schafer Decl. at ¶ 8); (Ex. C, Padoan Decl. at ¶ 6). Copies of the Deferred Remodel Addenda are attached as Exhibit "3" to the Schafer Decl. Specifically, as set forth in paragraph 2 of the Deferred Remodel Addenda, CBB's modified deadline to remodel BK #82 was November 30, 2018 and CBB's modified deadline to remodel BK #17461 was November 30, 2020. (Ex. A, Schafer Decl. at Ex. 3); (Ex. C, Padoan Decl. at ¶ 7).

For the sake of clarity, the Restaurants' number, location, Franchise Agreement expiration date, and remodel deadlines as set forth in the Franchise Agreements or Deferred Remodel Addenda are set forth in the chart below:

| BKC Restaurant No. | Location | Expiration Date of Franchise Agreement | Remodel Deadline |
|---|---|---|---|
| 82 | 3796 Congress Ave. South Lake Worth, FL 33461 | September 18, 2032 | November 30, 2018 |
| 2993 | 9031 Old Dixie Highway Lake Park, FL 33403 | February 28, 2023 | November 28, 2022 |
| 3697 | 8175 Glades Road Boca Raton, FL 33434 | May 20, 2023 | February 20, 2023 |

regard to the provisions at issue in this matter.

| BKC Restaurant No. | Location | Expiration Date of Franchise Agreement | Remodel Deadline |
|---|---|---|---|
| 17461 | 1760 S. Military Trail West Palm Beach, FL 33415 | September 29, 2029 | November 30, 2020 |

(Ex. C, Padoan Decl. at ¶ 8).

These remodel obligations and deadlines were also relevant to Counter-Defendants' right to successor locations (i.e., their right to renew their franchise locations as their existing Franchise Agreements expired). (Ex. C, Padoan Decl. at ¶ 9). Specifically, as set forth in Section 17.B.(4) of the Franchise Agreements, in order for Counter-Defendants to be eligible for a Successor Franchise Agreement, the Franchise Agreements require that:

> Franchisee shall have completed, not more than three (3) years and not less than three (3) months prior to the expiration of the Term of this Agreement, the improvements, alterations, remodeling or rebuilding of the interior and exterior of the Franchised Restaurant so as to reflect the then Current Image of BURGER KING Restaurants, pursuant to such plans and specifications as BKC reasonably approves.

(Ex. A, Schafer Decl. at Ex. 1 at §17.B.(4)). The Franchise Agreements further state that Counter-Defendants would be in default under the terms and conditions of the Franchise Agreements if Counter-Defendants failed to make all improvements, alterations, or remodelings as may be determined by BKC to be reasonably necessary to reflect BKC's current image. (Ex. A, Schafer Decl. at ¶ 9).

E.    **Counter-Defendants' Failure to Meet Remodel Deadlines**

Ultimately, Counter-Defendants failed to meet the remodel deadlines set forth in the Deferred Remodel Addenda for BK #82 and BK #17461. (Ex. A, Schafer Decl. at ¶ 10); (Ex. C, Padoan Decl. at ¶ 10). Thus, on September 11, 2023, due to Counter-Defendants' failure to meet the remodel obligations for BK #82 and BK #17461 under the Deferred Remodel Addenda, BKC issued Notices of Default to Counter-Defendants (the "Notices of Default"). (Ex. A, Schafer Decl. at ¶ 11). Copies of the Notices of Default are attached as Exhibit "4" to the Schafer Decl. The Notices of Default

5

provided Counter-Defendants with thirty (30) days from delivery of the Notices of Default to cure the remodel defaults. (Ex. A, Schafer Decl. at ¶ 12, Ex. 4).

Thereafter, Counter-Defendants failed to cure the remodel defaults for BK #82 and BK #17461 within the applicable cure period. (Ex. A, Schafer Decl. at ¶ 13). Accordingly, by letter dated November 21, 2023, BKC sent Counter-Defendants a letter confirming that the Franchise Agreements for BK #82 and BK #17461 had been terminated and demanding that Counter-Defendants comply with their post-termination obligations under the Franchise Agreements (the "Confirmation of Termination"). (Ex. A, Schafer Decl. at ¶ 14); (Ex. C, Padoan Decl. at ¶ 11). A copy of the Confirmation of Termination is attached as Exhibit "5" to the Schafer Decl.

Additionally, Counter-Defendants failed to meet the remodel deadlines set forth in Franchise Agreements for BK #2993 and BK #3697. (Ex. A, Schafer Decl. at ¶ 15); (Ex. C, Padoan Decl. at ¶ 12). And, those Franchise Agreements expired by their own terms. (Ex. A, Schafer Decl. at ¶ 16). Thus, on November 21, 2023, BKC sent Notices of Non-Successor of BURGER KING® Agreement to Counter-Defendants for BK #2993 and BK #3697 (the "Non-Successor Notices"). (Ex. A, Schafer Decl. at ¶ 17). Copies of Non-Successor Notices are attached as Exhibit "6" to the Schafer Decl.

The Non-Successor Notices stated, in pertinent part, that: (1) each Franchise Agreement had expired; and (2) Counter-Defendants failed to complete remodels by the deadline set forth in the Franchise Agreements, and therefore, pursuant to Section 17.B.(4) of the Franchise Agreements, Counter-Defendants had no right to renew or obtain a Successor Franchise Agreement. (Ex. A, Schafer Decl. at Ex. 6); (Ex. C, Padoan Decl. at ¶ 13).

Moreover, Counter-Defendants failed to give the requisite notice of their intent to renew the Franchise Agreements for BK #2993 and BK #3697 as required by Section 17 of the Franchise Agreements in any event. (Ex. A, Schafer Decl. at ¶ 18). Accordingly, Counter-Defendants had no

right to renew the Franchise Agreements for BK #2993 and BK #3697, the Franchise Agreements for each location expired, and Counter-Defendants were required to close BK #2993 and BK #3697 upon receipt of the Non-Successor Notice and comply with all post-termination covenants as set forth in the Franchise Agreements. (Ex. A, Schafer Decl. at ¶ 19); (Ex. C, Padoan Decl. at ¶ 13).

### F.   Obligations upon Termination or Expiration of the Franchise Agreements

Due to Counter-Defendants failure to meet the remodel obligations for BK #82 and BK #17461 under the Deferred Remodel Addenda, after notice and an opportunity to cure, the Franchise Agreements for BK #82 and BK #17461 terminated upon receipt of the Confirmation of Termination. (Ex. A, Schafer Decl. at ¶ 14, Ex. 5); (Ex. C, Padoan Decl. at ¶ 11). Additionally, the Franchise Agreements for BK #2993 and BK #3697 expired by their own terms. (Ex. A, Schafer Decl. at ¶ 16, Ex. 6). Accordingly, Counter-Defendants were required to comply with all post-termination covenants set forth in the Franchise Agreements for the Restaurants. (Ex. A, Schafer Decl. at ¶¶ 14, 19, Exs. 5, 6); (Ex. C, Padoan Decl. at ¶¶ 11-13).

The Franchise Agreements set forth the rights and obligations of the parties in the event of termination or expiration of the Franchise Agreements. (Ex. A, Schafer Decl. at Ex. 1 at §18(B)); (Ex. C, Padoan Decl. at ¶ 14). Under the terms of the Franchise Agreements, upon termination or expiration, Counter-Defendants agreed to not identify themselves as BURGER KING® franchisees and that their right to use the Marks terminated. (Ex. A, Schafer Decl. at Ex. 1 at §18(B)); (Ex. C, Padoan Decl. at ¶ 14). Specifically, the Franchise Agreements provide, in pertinent part, that after termination or expiration, franchisees, such as Counter-Defendants, shall not identify themselves as BURGER KING® franchisees or publicly identify themselves as BURGER KING® franchisees or use any of BKC's trade secrets, promotional materials, among other obligations. (Ex. A, Schafer Decl. at Ex. 1 at §18(B)); (Ex. C, Padoan Decl. at ¶ 15). Moreover, terminated or expired franchisees

are also required upon termination or expiration of their franchise agreements to immediately make such removals or changes in signs and the building as BKC shall request so as to effectively distinguish the building and premises from its former appearance and from any other BURGER KING® restaurant. (Ex. A, Schafer Decl. at Ex. 1 at §18(B)(3)); (Ex. C, Padoan Decl. at ¶ 16).

## G. Counter-Defendants' Infringement of the Marks and Refusal to Comply with Post-Termination Covenants

Pursuant to the express terms of the Franchise Agreements, Counter-Defendants were only permitted to operate the Restaurants through the date of termination or expiration of the Franchise Agreements. (Ex. C, Padoan Decl. at ¶ 18). Despite termination and expiration of the Franchise Agreements, and in violation of the express terms of the Franchise Agreements, Counter-Defendants continue to operate and hold themselves out to the public as owning and operating certain genuine and authorized BURGER KING® restaurants by continuing to use and display the Marks. (Ex. C, Padoan Decl. at ¶ 19).

Counter-Defendants continue to operate the Restaurants and display and/or use the Marks in their operations, including signage, menu boards, products, and more. (Ex. C, Padoan Decl. at ¶¶ 20-21, Comp. Ex. 1). Accordingly, Counter-Defendants are infringing on BKC's Marks and breaching their explicit obligations under the Franchise Agreements. (Ex. C, Padoan Decl. at ¶ 22). Specifically, due to Counter-Defendants' continued display or use of the Marks or any items associated with the BURGER KING® name, symbols, or slogans at the Restaurants, consumers who patronize the Restaurants have no way of knowing that the Restaurants are no longer affiliated with BKC. (Ex. C, Padoan Decl. at ¶¶ 23-24). Therefore, Counter-Defendants' continued use and display of the Marks and failure to comply with the post-termination covenants of the Franchise Agreements has and will continue to induce consumers to patronize the Restaurants under the mistaken belief that they are genuine and authorized BURGER KING® restaurants. (Ex. C, Padoan Decl. at ¶¶ 19, 23-

24). Accordingly, Counter-Defendants are infringing upon the Marks and breaching the explicit obligations of the Franchise Agreements.

Moreover, as a result of the termination and expiration of the Franchise Agreements, BKC is unable to control the nature and quality of the food, goods and services that Counter-Defendants provide at the Restaurants. (Ex. C, Padoan Decl. at ¶ 25). This is especially true since BKC cut off supply to the Restaurants. (Ex. C, Padoan Decl. at ¶ 26). Therefore, to the extent that Counter-Defendants are sourcing products for the Restaurants, which are not approved for use in the BURGER KING® system, those products might fail to meet the strict quality standards imposed by BKC, and consumers will attribute any shortcomings of the Restaurants to BKC. (*Id.*). If Counter-Defendants' operation of the Restaurants is allowed to continue, BKC will be unable to supervise the operations at the Restaurants, including performing inspections to ensure that compliance with food safety, sanitation and cleanliness standards are being met. (Ex. C, Padoan Decl. at ¶ 27). As a result, the potential damage to BKC's goodwill and reputation is incalculable. (Ex. C, Padoan Decl. at ¶¶ 27-29).

## III.   MEMORANDUM OF LAW

### A.   BKC Clearly Satisfies the Requirements for a Preliminary Injunction

In the Eleventh Circuit, a plaintiff is entitled to preliminary injunctive relief upon establishing the following:

> (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1530 n.13 (11th Cir. 1985); *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1001 (S.D. Fla. 1992); *Burger King Corp. v. Hall*, 770 F. Supp. 633, 636-

37 (S.D. Fla. 1991); *Tim Hortons USA, Inc. v. Tims Milner LLC*, No. 18-CV-24152, 2019 WL 2515006, at *3 (S.D. Fla. June 17, 2019); *Sundor Brands, Inc. v. Borden, Inc.*, 653 F. Supp. 86, 90 (M.D. Fla. 1986); *N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217 (M.D. Fla. 2002); *see also Salamon v. Karan Munuswamy, M.D., P.A.*, 566 So.2d 899 (Fla. Dist. Ct. App. 1990).

Counter-Defendants' continued operation of Restaurants after the termination and/or expiration of the respective Franchise Agreements violates the explicit terms of the Franchise Agreements and settled law. Accordingly, BKC will succeed on the merits of its breach of contract claims and its claims under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). Further, BKC is entitled to injunctive relief as the facts are clear that BKC will suffer irreparable harm if an injunction is not issued. This is especially true as BKC has lost control over operations at the Restaurants. As evidenced herein, BKC is likewise entitled to injunctive relief with respect to the Restaurants, which continue to unlawfully display the BURGER KING® Marks.

## B.  **BKC Has a Substantial Likelihood of Success on the Merits of Its Claims**

### 1.  **BKC Will Prevail on Its Breach of Contract Claims as the Franchise Agreements Were Properly Terminated or Have Expired**

Counter-Defendants clearly breached the Franchise Agreements by failing to remodel certain of the Restaurants after notice and an opportunity to cure. (Ex. A, Schafer Decl. at ¶ 13); (Ex. C, Padoan Decl. at ¶ 10, 18-22). Counter-Defendants also breached the Franchise Agreements by failing to close the Restaurants when the Franchise Agreements expired or were terminated. (Ex. A, Schafer Decl. at ¶¶ 14, 19, Exs. 5, 6); (Ex. C, Padoan Decl. at ¶¶ 19-22). Specifically, the Franchise Agreements require Counter-Defendants upon termination or expiration to, among other things, immediately (1) cease operating the restaurants as BURGER KING® restaurants, (2) cease use of the Marks and BURGER KING® System at the restaurants, and (3) distinguish the restaurants from their appearance as BURGER KING® restaurants. Counter-Defendants agreed that, upon

termination or expiration of the Franchise Agreements, their right to use the BKC Marks and

BURGER KING® system shall cease and they agreed not to identify themselves as BKC franchisees

or use any of BURGER KING® trade secrets, promotional materials, the BKC Marks or any mark

confusingly similar at the Restaurants. (Ex. A, Schafer Decl. Ex. 1 at § 18); (Ex. C, Padoan Decl. at

¶¶ 14-17).

Despite these clear obligations, Counter-Defendants continue to use the Marks in their

operation of the Restaurants as BURGER KING® restaurants. (Ex. C, Padoan Decl. at ¶¶ 18-21).

Plainly, Counter-Defendants breached the Franchise Agreements, and thus, BKC is likely to prevail

on its breach of contract claim.

## 2.     BKC Will Also Prevail on Its Claims under the Lanham Act

In enacting the Lanham Act, Congress' avowed purpose was:

> [t]o protect trade-marks . . . [and] to protect the public from deceit, to foster fair
> competition, and to secure to the business community the advantages of reputation
> and good will by preventing their diversion from those who have created them to
> those who have not.

*Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1215 (8th Cir. 1976) (quoting S. Rep. No.

1333, 1946 U.S. Code Cong. Serv. 1275).

The Lanham Act effects this purpose in two principal provisions: (i) Section 32(1), which

proscribes trademark infringement; and (ii) Section 43(a), which prohibits, *inter alia*, false

designations as to the source or origin of business establishments, services and goods. Under either

section, the Lanham Act "creates a claim for trademark infringement when a trademark holder can

demonstrate that the use of its trademark by another is likely to confuse consumers as to the source

of the product." *Home Box Office v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1314 (2d

Cir. 1987); *Burger King Corp. v. Majeed*, 805 F. Supp. at 1001. "[T]he critical question . . . is

whether there is a likelihood of confusion, mistake or deception between the registered mark and the

allegedly infringing mark." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983); *Sun-Fun Prods., Inc. v. Suntan Research & Dev. Inc.*, 656 F.2d 186, 189 (5th Cir. 1981); *Burger King Corp. v. Majeed*, 805 F. Supp. at 1001

Moreover, "the test for liability under both [Section 32 and Section 43] is the same. *Tim Hortons USA, Inc.*, 2019 WL 2515006, at *4; *see also Chanel, Inc. v. Besumart.com*, 240 F. Supp. 3d 1283, 1289 (S.D. Fla. 2016) (citations omitted) (the tests for liability for false designation and trademark infringement under the Lanham Act and for trademark infringement under Florida's common law are the same). And, "[a]s a general rule . . . the same facts which would support an action for trademark infringement [under section 32(1)] would also support an action for unfair competition [under section 43(a)]." *Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975).

 In this regard, "it is well established that falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or *sponsorship*"—such as by using the Marks without permission—"constitutes infringement." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) (emphasis in original) (quoted in *Burger King Corp. v. Hall*, 770 F. Supp. at 637). BKC, then, must demonstrate that there is a "likelihood of confusion" between its marks and the marks displayed by Defendants.

This case is similar to *Burger King Corp. v. Mason*, *Burger King Corp. v. Majeed*, and *Burger King Corp. v. Hall*. In each of those cases, as here, the defendants used the Marks without plaintiff's consent after termination of the franchise. In *Mason*, a holding applicable here, the Eleventh Circuit stated:

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. A patron of a restaurant adorned with the [franchisor's] trademarks undoubtedly would believe that [franchisor] endorses the operation of the restaurant.

> Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise therefore would be attributed to [franchisor].

*Burger King Corp. v. Mason*, 710 F.2d at 1492-93.

Subsequent to *Burger King Corp. v. Mason*, the Eleventh Circuit and Southern District of Florida have continually reached similar conclusions. Opinions issued in *McDonald's Corp. v. Robertson*, *Burger King Corp. v. Majeed*, and *Burger King Corp. v. Hall* all reflect the well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement. *See also Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1566 (11th Cir. 1986) (franchisor entitled to damages under the Lanham Act for defendant's "holding over," which is "no different than unlawfully using . . . marks from the beginning"); *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975) ("[a] former trademark licensee cannot mislead the public into believing that its affiliation continues once the licensing arrangement has ceased").

Where a franchisee's authorization to use a franchisor's trademarks and service marks expires or terminates, courts have summarily determined that a "likelihood of confusion" exists, and therefore, that the franchisor is likely to prevail on the merits of its trademark infringement claim. In fact, the Eleventh Circuit stated, in a franchise termination suit, "[o]bviously, in this case, such a substantial likelihood of confusion—indeed, a certainty of confusion—[between the franchisee's] substandard products with [the franchisor's] certified products exists." *McDonald's Corp.*, 147 F.3d 1310. Put more simply, the bankruptcy court for the Middle District of Florida stated "[c]ontinued trademark use by one whose trademark license had been canceled satisfies likelihood of confusion test and constitutes 'trademark infringement.'" *In re Gainesville P-H Props., Inc.*, 77 B.R. 285, 294 (Bankr. M.D. Fla. 1987).

Unquestionably, then, BKC will prevail on its Lanham Act claims as Counter-Defendants' unauthorized use of the Marks can have no result other than that which they intend, *i.e.*, to cause actual confusion. Consumers could not possibly know that the Restaurants have no affiliation with BKC, and, as such is dispositive of the infringement issue. *Burger King Corp. v. Majeed*, 805 F. Supp. at 1003; *Burger King Corp. v. Hall*, 770 F. Supp. at 638.

   **C.** **Counter-Defendants' Continuing Infringement of the Marks Will Irreparably Injure BKC**

BKC's loss of the ability to control the quality of the goods and services at the Restaurants, as well as consumer's confusion with regard to Counter-Defendants' failure to de-identify the Restaurants will result in irreparable harm. (Ex. C, Padoan Decl. at ¶¶ 23-29). Consumers will attribute any shortfall in quality, or harm, at the Restaurants to the BURGER KING® brand since the products are being sold under its Marks. (Ex. C, Padoan Decl. at ¶ 26). As a result, Counter-Defendants' sale of products post-termination and/or post-expiration under the BURGER KING® Marks at the Restaurants and failure to de-identify the Restaurants creates the likelihood of damage to the BURGER KING® reputation and goodwill, and ultimately loss of customers, the amounts of which are not calculable. (Ex. C, Padoan Decl. at ¶¶ 25-29).

As the Eleventh Circuit stated in *Ferrelgas Partners, L.P. v. Barrow*, "a plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff. It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm." 143 Fed. App'x 180, 190-91 (11th Cir. 2005) ("grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion."); *Abbey Carpet Co. v. Abbey Flooring, LLC*, No. 5:18-CV-109-OC-30PRL, 2018 WL 2074170, at *6 (M.D. Fla. Apr. 13, 2018), *report and recommendation adopted,* No. 5:18-CV-109-OC-30PRL, 2018 WL 2011105 (M.D. Fla. Apr. 30,

2018) ("The inherent difficulty of quantifying the lost good will that would result from customer confusion about the quality and nature of Plaintiff's product and services suggests the harm is likely to be irreparable."); *Adidas AG v. adidascrazylight2.com*, No. 13-21230-CIV-ALTONAGA, 2013 WL 1651731 at \*7 (April 16, 2013 S.D. Fla.) ("The operation of [d]efendants' websites displaying [p]laintiffs' [m]arks and the sale of [d]efendants' inferior goods to consumers is likely to cause irreparable damage to [p]laintiffs' respective reputations if they continue because [p]laintiffs will not have the ability to control the quality of what appears to be their goods in the marketplace. This damage to [p]laintiffs' respective reputations and goodwill could not be easily quantified nor could it be undone through an award of money damages.").

Moreover, as one court held in barring a terminated franchisee from using franchisor's marks under similar circumstances:

> [Franchisor] is unable to control the nature and quality of the goods and services that the defendant[] provide[s] at [its] restaurant. Any activities by the defendant[] at the restaurant that do not meet the standards ordinarily imposed by [franchisor] could irreparably harm the goodwill associated with [franchisor's] marks and, accordingly, [franchisor's] reputation. . . . [S]uch potential harm [is] sufficient to justify injunctive relief.

*Burger King Corp. v. Triana*, No. 88 C 4364, 1988 WL 58614 (N.D. Ill. May 31, 1988); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) ("Customers would believe that they were eating McDonald's sanctioned products when they consumed improperly cooked and unsanitarily maintained food products from the Robertsons' store. We can conceive of no realistic way to determine the damages under these circumstances. . . . Consequently, the district court correctly concluded that McDonald's made a sufficient showing of irreparable injury to justify entry of the preliminary injunction."); *FSC Franchise Co., LLC v. Express Corporate Apparel, LLC*, No. 8:09-CV-454-T-23TGW, 2009 WL 3334138 (M.D. Fla. Oct. 6, 2009) (defendant's distribution of product associated with the plaintiff without quality control may tarnish the mark and goodwill

associated with it sufficient to show irreparable harm); *Petro Franchise Sys. v. All Am. Props., Inc.,* 607 F. Supp. 2d 781, 794-95 (W.D. Tex. 2009) (potential harm would occur should marketplace believe that the plaintiff was sponsoring the defendant's business or if franchisees provide services different from plaintiff's, even if superior, the plaintiff suffers a risk of injury to reputation and loses control over goodwill); *Blue Bell Creameries, L.P. v. Denali Co*., LLC, No. H-08-0981, 2008 WL 2965655, at *6 (S.D. Tex. July 31, 2008) (franchisor showed irreparable injury where it would lose control over its marks, eventually lose other licensees, and it had lost quality control over its ice cream).

Given the foregoing, BKC will plainly suffer irreparable injury in the event that a preliminary injunction is denied. *See id*. As a result of Counter-Defendants' sale of products after the termination and/or expiration of the Franchise Agreements under the BURGER KING® Marks at the Restaurants, BKC faces the likelihood of damage to its reputation and goodwill, and ultimately loss of customers. (Ex. C, Padoan Decl. at ¶ 29). Consumers will attribute any shortfall in quality, or harm, to the BURGER KING® brand since the products are being sold under BKC's Marks. (Ex. C, Padoan Decl. at ¶¶ 25-29). Significantly, if Counter-Defendants are allowed to sell to the consuming public at the Restaurants using the Marks, and not required to de-identify the Restaurants, potential harm will occur should the public believe that BKC was sponsoring Counter-Defendants' business at the Restaurants. (*Id*.).

Thus, BKC will suffer irreparable harm and is entitled to injunctive relief.

**D.    The Threatened Injury to BKC Outweighs Any Threatened Harm to Counter-Defendants**

Clearly, the threatened harm to BKC outweighs any harm Counter-Defendants may suffer from the grant of injunctive relief. Courts in this and other Circuits have found that a "franchisee that has breached the terms of its franchise agreement cannot complain of the harm it would suffer if a

court enjoins it from the continued use of the franchisor's trademarks." *Tim Hortons USA, Inc.*, 2019 WL 2515006, at *6 (collecting cases). And, as the court noted in *Am. Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103 (2d Cir. 1978), "[o]ne who adopts the mark of another for similar goods acts at his own peril," since he has no claim to the profits or advantages thereby derived. *Id.* at 107.

In the instant case, any harm suffered by Counter-Defendants will have been occasioned by their own actions. Plainly, Counter-Defendants here have no equitable standing to complain of injury should its infringement be preliminarily enjoined. *See Tim Hortons USA, Inc.*, 2019 WL 2515006, at *6, *Burger King Corp. v. Majeed*, 805 F. Supp. at 1006; *Burger King Corp. v. Hall*, 770 F. Supp. at 640.

### E.      The Public Interest Will be Furthered by the Issuance of the Requested Relief

Finally, public policy considerations mandate the requested relief. In *Sundor Brands*, the court stated that:

> In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount. Indeed, when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation.

653 F. Supp. at 93. As the Southern District of Florida held in *Burger King Corp. v. Hall*:

> The public interest can only be served by the immediate interdiction of [franchisee's] use of the Marks. Consumers who rely upon the Marks in patronizing [the] restaurant are being deceived into purchasing products under the mistaken belief that [franchisee is] operating a genuine Burger King Restaurant, backed by [Franchisor] as its sponsor, and subject to [Franchisor's] stringent quality and service controls.

770 F. Supp. at 640.

It is the Lanham Act's express purpose to enjoin such deception, and thus to grant the public and trademark holder effective relief:

> [T]he public interest is especially served by issuing a preliminary injunction against a former licensee as the licensee's status increases the probability of consumer

> confusion. A licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder. When such party, as defendant here, loses its authorization yet continues to use the mark, the potential for consumer confusion is greater than in the case of a random infringer. Consumers have already associated some significant source identification with the licensor. In this way the use of a mark by a former licensee confuses and defrauds the public.

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir.

1986). As this Court stated in entering an injunction:

> [T]he public will be protected and secure in their knowledge that when they patronize a restaurant which utilizes the Burger King trademarks, service marks and other logos, that restaurant is a properly licensed and authorized and franchised Burger King restaurant.

*Burger King Corp. v. Majeed*, 805 F. Supp. at 1006 (quoting *Burger King Corp. v. Hall*, 770 F.

Supp. at 640).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that Defendant and Counter-Plaintiff Burger King Company LLC's motion for preliminary injunction be granted and an injunction issued for the relief set forth therein and in Burger King Company LLC's Complaint.

WHEREFORE, Burger King Company LLC seeks the following against Counter-Defendants Defendants Consolidated Burger B, LLC, Consolidated Burger Holdings, LLC, Parent Consolidated Burger Holdings, LLC, and Lee Baugher:

1.      A preliminary injunction enjoining Counter-Defendants Consolidated Burger B, LLC, Consolidated Burger Holdings, LLC, Parent Consolidated Burger Holdings, LLC, and Lee Baugher and all persons acting on their behalf, in concert with, or under their control, from:

(a)  manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Marks, or any colorable imitation thereof at the Restaurants;

(b) displaying or using any of the Marks to advertise or promote the sale of, or to identify, the Restaurants, or any product or service provided therein; and

(c) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe the Restaurants and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by BKC.

2.     A preliminary injunction directing enjoining Counter-Defendants Consolidated Burger B, LLC, Consolidated Burger Holdings, LLC, Parent Consolidated Burger Holdings, LLC, and Lee Baugher and all persons acting on their behalf, in concert with them, or under their control, to:

(a) recall and deliver to BKC all signs, banners, labeling, packaging, advertising, promotional display and point-of-purchase materials which bear, or make reference to, any of the Marks, or any colorable imitation of the Marks at the Restaurants;

(b) recall and deliver up to BKC on all copies and editions of the Manual that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto and all other materials containing restaurant operating instructions, restaurant business practices, or plans of BKC to the extent that there are any at the Restaurants;

(c) allow BKC, at a reasonable time, to enter the premises of the Restaurants and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from its appearance as a BURGER KING® restaurant.

## REQUEST FOR HEARING

Pursuant to S.D. Fla. L.R. 7.1(b), BKC requests a hearing on its Motion for Preliminary Injunction and Supporting Memorandum of Law as BKC desires to have this matter considered

promptly by this Court. Unless immediately enjoined, Counter-Defendants will continue to pirate the Marks and BKC's reputation and goodwill while perpetrating a fraud upon consumers who will be under the mistaken belief that the restaurants are genuine BURGER KING® restaurants. In addition, the economic and intangible value of the goodwill and good reputation associated with the Marks are being threatened and tarnished by Counter-Defendants' unauthorized use. While BKC submits that consideration of this matter is not an emergency at this moment, BKC's Motion for Preliminary Injunction and Supporting Memorandum of Law deals with the operation of restaurants that are no longer under BKC's control. It is anticipated that a three (3) hour hearing will be sufficient, given the straightforward issues involved.

Respectfully submitted,

**VENABLE LLP**
*Attorneys for Burger King Company LLC*
100 Southeast Second Street
Miami Tower, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By: /s/ Michael D. Joblove
    Michael D. Joblove
    Florida Bar No.: 354147
    MDJoblove@Venable.com
    Elizabeth McIntosh
    Florida Bar No. 1011555
    EGMcIntosh@Venable.com

Case No. 23-cv-24419

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served ***via electronic mail*** on all parties identified on the attached service list this 2nd day of January, 2024. Additionally, courtesy copies of the foregoing document will be sent ***via Federal Express*** to ***Parent Consolidated Burger Holdings, LLC*** and ***Lee Baugher*** at the addresses listed on the attached service.

/s/  Michael D. Joblove
Attorney

21

Case No. 23-cv-24419

## <u>SERVICE LIST</u>

Case No. 23-cv-24419

*Consolidated Burger Holdings, LLC, et al. v. Burger King Corporation*

Michael D. Joblove, Esq.
mjoblove@gjb-law.com
Elizabeth McIntosh
EGMcIntosh@Venable.com
VENABLE LLP
100 Southeast Second Street
Miami Tower, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Attorneys for Burger King Company LLC*

Robert Zarco, Esq.
rzarco@zarcolaw.com
Himanshu M. Patel, Esq.
hpatel@zarcolaw.com
Michael D. Braunstein
mbraunstein@zarcolaw.com
ZARCO EINHORN SALKOWSKI, P.A.
One Biscayne Tower
2 S. Biscayne Blvd., Suite 3400
Miami, Florida 33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428
*Counsel for Plaintiffs*

***<u>Via Federal Express</u>***
Parent Consolidated Burger Holdings, LLC
By Serving Its Registered Agent:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

***<u>Via Federal Express</u>***
Lee Baugher
10715 Black Iron Road
Louisville, KY 40291-4007