# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-24419

CONSOLIDATED BURGER HOLDINGS,
LLC, a Delaware Limited Liability
Company, CONSOLIDATED BURGER A,
LLC, a Delaware Limited Liability
Company, and CONSOLIDATED
BURGER B, a Delaware Limited Liability
Company,

      Plaintiffs,

v.

BURGER KING CORPORATION, A
Florida Corporation,

      Defendant.

_____/

## DEFENDANT BURGER KING COMPANY LLC'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND AMENDED COUNTERCLAIM

Defendant Burger King Company LLC ("BKC"), pursuant to Fed. R. Civ. P. 15(a)(1)(A), hereby files this Amended Answer and Affirmative Defenses to the First Amended Complaint [ECF No. 6] filed by Plaintiffs Consolidated Burger Holdings, LLC, Consolidated Burger A, LLC, and Consolidated Burger B, LLC (collectively, "Plaintiffs") together with its Amended Counterclaim.

## AMENDED ANSWER

BKC's response to each allegation of Plaintiffs' First Amended Complaint is set forth below, with each numbered paragraph corresponding to the paragraph number in Plaintiffs' First Amended Complaint.

**Parties, Jurisdiction and Venue**

1.     BKC is without knowledge as to the allegations in paragraph 1, and therefore denies them.

2.     BKC is without knowledge as to the allegations in paragraph 2, and therefore denies them.

3.     BKC is without knowledge as to the allegations in paragraph 3, and therefore denies them.

4.     BKC states in response to paragraph 4 that Burger King Company LLC is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

5.     BKC admits in response to paragraph 5 that the Court has subject matter jurisdiction over the parties' dispute.

6.     BKC admits in response to paragraph 6 that venue is appropriate in this District.

**General Allegations**

**A.     CBH and Its Affiliates(s) Join the BKC Franchise System**

7.     BKC admits in response to paragraph 7 that it was looking for a qualified franchisee to acquire a portfolio of approximately 66 underperforming restaurants located in Florida and Georgia. BKC further admits that the restaurants had operational challenges, as well as financial challenges.

8.     In response to paragraph 8, BKC admits only that it engaged in discussions with Plaintiffs about the possibility of their acquiring the 66 restaurant locations.

9.     The allegations in paragraph 9 are denied.

10.     In response to paragraph 10, BKC admits that the parties entered the Area Development and Remodeling Agreement on or about June 1, 2018. The requirements of the

Agreement speak for themselves. The balance of paragraph 10 is denied.

11.     In response to paragraph 11, BKC states that the parties' agreement is reflected by their written agreement, and therefore the balance of the allegations of the paragraph are denied. Further, BKC is without knowledge as to what CBH's representatives anticipated at the time they entered the agreement.

12.     In response to paragraph 12, BKC acknowledges that expenditures were required due to Hurricane Michael and it is without knowledge of the balance of the allegations.

**B.     CBB'S Execution of Franchise Agreements**

13.     The allegations of paragraph 13 are admitted.

14.     BKC admits that the Franchise Agreement for BK #82 included a Deferred Remodel Addendum and that the original remodel deadline in the addendum was November 30, 2018. The balance of the allegations are denied.

15.     The allegations in paragraph 15 are admitted.

16.     In response to paragraph 16, BKC admits that a Deferred Remodel Addendum was executed in connection with the Franchise Agreement with a stated remodel deadline of November 30, 2020.

17.     The allegations in paragraph 17 are denied.

18.     In response to paragraph 18, BKC admits that CBB has continued to operate BK #9360.

19.     The allegations of paragraph 19 are admitted.

20.     In response to paragraph 20, BKC admits that CBB continues to operate BK #3697.

21.     In response to paragraph 21, BKC admits that Mr. Corbolotti discussed BKOT with Plaintiffs. The balance of allegations in paragraph 21 are denied.

22.     The allegations in paragraph 22 are denied.

23.     The allegations in paragraph 23 are denied.

**C.     CBH Executed Remodel Agreement, Which Terminates 2018 Remodeling Agreement**

24.     In response to paragraph 24, BKC admits that on or about December 5, 2019, CBH and BKC entered a Remodel Agreement whose obligations speaks for themselves.

25.     The allegations of paragraph 25 are admitted.

26.     In response to paragraph 26, BKC admits that Plaintiffs have quoted from various provisions of the 2019 Agreement.

27.     The allegations in paragraph 27 are admitted.

28.     The allegations in paragraph 28 are denied.

29.     The allegations in paragraph 29 are denied.

**D.     COVID-19 Pandemic Hits the United States**

30.     In response to paragraph 30, BKC admits that certain remodel deadlines were extended due to COVID-19. The balance of the allegations in paragraph 30 are denied.

31.     In response to paragraph 31, BKC admits the first two sentences. The balance of the allegations in paragraph 31 are denied.

32.     In response to paragraph 32, BKC admits that the 2019 Remodel Agreement expired December 31, 2021 and denies the balance of the allegations.

**E.     BKC Seeks to Impose Draconian Business Terms**

33.     In response to paragraph 33, BKC admits that the 2019 Remodel Agreement expired effective December 31, 2021, and that over time, the parties discussed Plaintiffs' remodeling obligations. The balance of the allegations in paragraph 33 are denied.

34.     In response to paragraph 34, BKC admits that in early 2023 the parties discussed

Plaintiffs' possible participation in the Reclaim the Flame program and were unable to come to an agreement as to its terms.

35.     In response to paragraph 35, BKC admits that BKC and Plaintiffs engaged in telephone conversations and meetings to discuss possible terms in a Reclaim the Flame Agreement. The balance of the allegations are denied.

36.     In response to paragraph 36, BKC admits that the parties were unable to come to terms regarding a Reclaim the Flame Agreement, and that Plaintiffs would not agree to various conditions sought by BKC. The balance of the allegations are denied.

37.     The allegations in paragraph 37 are denied.

38.     In response to paragraph 38, BKC admits that Jose Padilla engaged in discussions with Plaintiffs regarding remodel obligations and other terms and that no deal was ultimately consummated. The balance of the allegations are denied.

**F.      BKC Issues Notices of Remodel Default and Notices of Non-Successor of Burger King Restaurants**

39.     In response to paragraph 39, BKC admits that on September 11, 2023 it issued Notices of Remodel Default for BK #82 and BK #17461. The balance of the allegations are denied.

40.     In response to paragraph 40, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Remodel Default.

41.     The allegations in paragraph 41 are denied.

42.     The allegations in paragraph 42 are denied.

43.     In response to paragraph 43, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Default for BK #17461.

44.     The allegations in paragraph 44 are denied.

45.     The allegations in paragraph 45 are admitted.

46.     In response to paragraph 46, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Non-Successor of Burger King Agreements for BK #2993.

47.     The allegations in paragraph 47 are denied.

48.     The allegations in paragraph 48 are denied.

49.     In response to paragraph 49, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Non-Successor of Burger King Agreements for BK #3697.

50.     The allegations in paragraph 50 are denied.

51.     The allegations in paragraph 51 are denied.

52.     In response to paragraph 52, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Non-Successor of Burger King Agreements for BK #9360.

53.     The allegations in paragraph 53 are denied.

54.     The allegations in paragraph 54 are denied.

55.     BKC is without knowledge as to the allegations in paragraph 55, and they are therefore denied.

56.     BKC is without knowledge as to the allegations in paragraph 56, and they are therefore denied.

57.     The allegations in paragraph 57 are denied.

58.     In response to paragraph 58, BKC is without knowledge as to the amounts Plaintiffs spent to acquire, improve, remodel, and repairs its BK restaurants, and otherwise denies the allegations.

59.     In response to paragraph 59, BKC is without knowledge of Plaintiffs' EBITDA margins and otherwise denies the allegations.

60.     The allegations in paragraph 60 are denied.

61.     The allegations in paragraph 61 are denied.

**G.      Following Plaintiffs' Initiation of This Litigation, BKC Retaliates Against Plaintiffs' Affiliate CBA**

62.     In response to paragraph 62, BKC admits that it issued Notices of Remodel Defaults for the restaurants listed, as well as Notices of Non-Successor of Burger King Agreements for the restaurants listed. BKC further admits that it issued a notice confirming the termination of BK #82 and BK #17461. The balance of the allegations are denied.

63.     In response to paragraph 63, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Default for BK #1684.

64.     The allegations in paragraph 64 are denied.

65.     The allegations in paragraph 65 are denied.

66.     In response to paragraph 66, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Default for BK #5557.

67.     The allegations in paragraph 67 are denied.

68.     In response to paragraph 68, BKC admits that Plaintiffs have correctly quoted from the Notice of Default for BK #6621.

69.     The allegations in paragraph 69 are denied.

70.     In response to paragraph 70, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Non-Successor of Burger King Agreements for BK #307.

71.     The allegations in paragraph 71 are denied.

72.     The allegations in paragraph 72 are denied.

73.     In response to paragraph 73, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Non-Successor of Burger King Agreement for BK #12158.

74.     The allegations in paragraph 74 are denied.

75.     In  response  to  paragraph  75,  BKC  admits  that  the  2019  Remodel  Agreement expired on December 31, 2021. The balance of the allegations are denied.

76.     In response to paragraph 76, BKC admits that Plaintiffs have correctly quoted from a portion of the Notice of Non-Successor letter.

77.     The allegations in paragraph 77 are denied.

78.     The allegations in paragraph 78 are denied.

79.     In response to paragraph 79, BKC admits that it instructed vendors to cease food deliveries at the restaurants listed in paragraph 79. The balance of paragraph 79 is denied.

80.     The allegations in paragraph 80 are denied.

81.     The allegations in paragraph 81 are denied.

82.     The allegations in paragraph 82 are denied.

## LEGAL CAUSES OF ACTION

### Count I – Declaratory Judgment
**(Plaintiffs Against BKC)**

83.     BKC  incorporates  herein  its  responses  to  paragraphs  1-82  of  the  Amended Complaint.

84.     The allegations in paragraph 84 are admitted.

85.     The allegations in paragraph 85 are admitted.

86.     The allegations in paragraph 86 are denied.

87.     The allegations in paragraph 87 are denied.

88.     The allegations in paragraph 88 are denied.

### Count II – Breach of 2019 Remodel Agreement
**(CBH Against BKC)**

89.     For  its  response  to  paragraph  89,  BKC  incorporates  herein  its  responses  to

paragraphs 1 through 82 of the Amended Complaint.

90.     The allegations in paragraph 90 are admitted.

91.     The allegations in paragraph 91 are denied.

92.     The allegations in paragraph 92 are denied.

93.     The allegations in paragraph 93 are denied.

94.     The allegations in paragraph 94 are denied.

### Count III – Breach of the Implied Covenant of Good Faith and Fair Dealing
**(CBH Against BKC)**

95.     For its response to paragraph 95, BKC incorporates herein its responses to paragraphs 1 through 82 and 90 through 94 of the Amended Complaint.

96.     The allegations in paragraph 96 are legal conclusions to which a response is not required.

97.     The allegations in paragraph 97 are denied.

98.     The allegations in paragraph 98 are denied.

### Count IV – Breach of Franchise Agreements
**(CBB Against BKC)**

99.     For its response to paragraph 99, BKC incorporates herein its responses to paragraphs 1 through 82 of the Amended Complaint.

100.    The allegations in paragraph 100 are admitted.

101.    The allegations in paragraph 101 are denied.

102.    The allegations in paragraph 102 are denied.

103.    The allegations in paragraph 103 are denied.

### Count V – Breach of the Implied Covenant of Good Faith and Fair Dealing
**(CBB Against BKC)**

104.    For its response to paragraph 104, BKC incorporates herein its responses to

paragraphs 1 through 82 and 100 through 103 of the Amended Complaint.

105.     The allegations in paragraph 105 assert legal conclusions to which no response is required.

106.     The allegations in paragraph 106 are denied.

107.     The allegations in paragraph 107 are denied.

**Count VI – Breach of Franchise Agreements**
**(CBB Against BKC)**

108.     For its response to paragraph 108, BKC incorporates herein its responses to paragraphs 1 through 82 of the Amended Complaint.

109.     The allegations in paragraph 109 are admitted.

110.     For its response to paragraph 110, BKC hereby incorporates its responses to paragraphs 39 through 44 of the Amended Complaint.

111.     In response to paragraph 111, BKC admits that it issued the notice confirming termination referenced. The balance of the allegations are denied.

112.     The allegations in paragraph 112 are denied.

**Count VII – Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(CBB Against BKC)**

113.     For its response to paragraph 113, BKC incorporates herein its responses to paragraphs 1 through 82 and 109 through 112 of the Amended Complaint.

114.     The allegations in paragraph 114 are legal conclusions to which no response is required.

115.     The allegations in paragraph 115 are denied.

116.     The allegations in paragraph 116 are denied.

### Count VIII – Breach of Franchise Agreements
**(CBA Against BKC)**

117.    For its response to paragraph 117, BKC incorporates herein its responses to paragraphs 1 through 82 of the Amended Complaint.

118.    The allegations in paragraph 118 are admitted.

119.    The allegations in paragraph 119 are denied.

120.    The allegations in paragraph 120 are denied.

121.    The allegations in paragraph 121 are denied.

### Count IX – Breach of the Implied Covenant of Good Faith and Fair Dealing
**(CBA Against BKC)**

122.    For its response to paragraph 122, BKC incorporates herein its responses to paragraphs 1 through 82 and 118 through 121 of the Amended Complaint.

123.    The allegations in paragraph 123 are legal conclusions to which no response is required.

124.    The allegations in paragraph 124 are denied.

125.    The allegations in paragraph 125 are denied.

### Count X – Anticipatory Breach of Franchise Agreements
**(CBA Against BKC)**

126.    For its response to paragraph 126, BKC incorporates herein its responses to paragraphs 1 through 82 of the Amended Complaint.

127.    In response to paragraph 127, BKC admits that Plaintiffs are attempting to assert a cause of action for anticipatory breach of three franchise agreements.

128.    In response to paragraph 128, BKC admits that it issued a Notice of Remodel Default for the franchise agreements and that Plaintiffs failed to cure their default.

129.    In response to paragraph 129, BKC admits that the failure to have timely cured

default is grounds for termination. The balance of the allegations are denied.

130.    The allegations in paragraph 130 are denied.

## Count XI – Injunctive Relief
### (CBB Against BKC)

131.    For its response to paragraph 131, BKC incorporates herein its responses to paragraphs 1 through 82 of the Amended Complaint.

132.    In response to paragraph 132, BKC admits that Plaintiffs are attempting to assert a claim for injunctive relief.

133.    The allegations in paragraph 133 are argument and are therefore denied.

134.    The allegations in paragraph 134 are argument and are therefore denied.

135.    BKC is without knowledge as to the allegations in paragraph 135 and therefore denies them.

136.    The allegations in paragraph 136 are denied.

137.    The allegations in paragraph 137 are denied.

138.    Any allegation in Plaintiffs' First Amended Complaint which has not been expressly admitted herein is denied.

## AFFIRMATIVE DEFENSES

BKC asserts the following affirmative defenses to Plaintiffs' claims:

### First Affirmative Defense

Plaintiff's claims are barred in whole or in part by the release set forth in the Conditional Consent to Assignment executed on June 1, 2018, and the Remodel Agreement executed on December 5, 2019.

### Second Affirmative Defense

Plaintiffs' claims are barred because they committed prior material breaches of the parties'

agreements.

**Third Affirmative Defense**

Plaintiffs' claims are barred, in whole or part, by the parol evidence and/or extrinsic evidence rules.

**Fourth Affirmative Defense**

Plaintiff's claims for breach of the implied covenant of good faith and fair dealing are barred, because Plaintiff's claims for breach of Franchise Agreements fail, and a claim for the implied covenant of good faith and fair dealing is untenable where there is no claim for breach of contract.

**Fifth Affirmative Defense**

Plaintiffs' claims are barred because it failed to mitigate its damages, if any.

BKC reserves the right to amend or supplement these affirmative defenses as more information becomes known through the course of discovery and trial preparation.

WHEREFORE, Burger King Company LLC demands judgment in its favor and against Plaintiffs Consolidated Burger Holdings, LLC, Consolidated Burger A, LLC, and Consolidated Burger B, LLC on Counts I, II, III, IV, V, VI, VII, VIII, IX, X, and XI of their First Amended Complaint [ECF No. 6], an award of attorneys' fees and costs, and such other and further relief as this Court deems just and proper.

**AMENDED COUNTERCLAIM**

Counter-Plaintiff, Burger King Company LLC ("BKC") files this Amended Counterclaim and sues Counter-Defendants Consolidated Burger A, LLC ("CBA"), Consolidated Burger B, LLC ("CBB"), Consolidated Burger Holdings, LLC ("CBH"), Parent Consolidated Burger Holdings, LLC ("Parent CBH"), and Lee Baugher ("Baugher") (collectively, "Counter-Defendants") and

states:

1.      This is an action to enjoin Counter-Defendants' unauthorized use of BKC's valuable trademarks and service marks in connection with their unlawful operation of restaurants as authorized BURGER KING ® restaurants, as well as for damages under the Lanham Act and the agreements between the parties.

## I.      THE PARTIES

2.      Counter-Plaintiff Burger King Company LLC is a Florida limited liability company with its principal place of business in Miami, Florida.

3.      Upon information and belief, Consolidated Burger A, LLC is a Delaware limited liability company with its principal place of business in Destin, Florida.

4.      Upon information and belief, Counter-Defendant Consolidated Burger B, LLC is a Delaware limited liability company with its principal place of business in Destin, Florida.

5.      Upon information and belief, Counter-Defendant Consolidated Burger Holdings, LLC is a Delaware limited liability company with its principal place of business in Greenwich, Connecticut.

6.      Upon information and belief, Additional Party Counter-Defendant Parent Consolidated Burger, LLC is a Delaware limited liability company with its principal place in Greenwich, Connecticut.

7.      Upon information and belief, Additional Party Counter-Defendant Lee Baugher is a citizen and resident of the State of Kentucky.

8.      The Additional Party Counter-Defendants are added because they are jointly and severally liable based on the transactions that are the subject of this Counterclaim.

## II.    JURISDICTION AND VENUE

9.     BKC operates and franchises restaurants throughout the world, including the United States. Founded over 65 years ago, BKC has approximately 20,000 franchised restaurants in the world.

10.     BKC's franchise operations are conducted and supervised from its world headquarters located in Miami, Florida. BKC and Counter-Defendants have carried on a continuous course of direct communications by mail, e-mail, and by telephone through BKC's headquarters in Miami, Florida.

11.     The course of dealing between BKC and its franchisees, including Counter-Defendants, shows that decision-making authority is vested in BKC's headquarters in Miami, Florida.

12.     Counter-Defendants have breached a contract which was to be performed in Florida due to their failure to cease use of the BURGER KING® trademarks and system after certain franchise agreements expired or were terminated. These breaches have caused damage to BKC at its headquarters in Miami, Florida.

13.     This Court has jurisdiction over this action based upon:

a.     Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1337, and 1338(a), for the claims arising out of Counter-Defendants' violations of Sections 32, and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

b.     28 U.S.C. § 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Counter-Defendants' breach of contract and common law unfair competition.

14.     Venue is proper in this Southern District of Florida pursuant to 28 U.S.C. § 1391

and the forum selection clause agreed to by the parties in their written agreement.

15.     BKC has engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between BKC and Counter-Defendants.

### III.     FACTUAL BACKGROUND

#### A.     The BKC Marks

16.     To identify the source, origin and sponsorship of BKC's facilities, products, and services, BKC has extensively employed, caused to be advertised and publicized throughout the United States (and elsewhere) certain distinctive symbols as trademarks and service marks (the "Marks"). BKC owns and was the first to adopt and use the Marks as trademarks and services marks and all right, title, and interest in and to the Marks and the design, décor, and image of BURGER KING® restaurants remains vested solely in BKC in Miami, Florida.

17.     BKC operates and franchises BURGER KING® restaurants using the Marks on signs, menu boards, posters, uniforms, packaging, cups, and other items in advertising to the public through television, print media, and the internet.

18.     Set forth below is an abbreviated listing of the Marks registered to BKC in the United States Patent and Trademark Office:

| Trademark | Status | Application Number | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|---|
| BK | Registered | 77/975676 | 08/10/2007 | 3476576 | 07/29/2008 | 09, 29, 30, 32, 36 |
| BK | Registered | 77/252106 | 08/10/2007 | 3534987 | 11/18/2008 | 29 |
| BK | Registered | 76/484750 | 01/24/2003 | 2790924 | 12/09/2003 | 43 |
| BURGER KING | Registered | 72/306090 | 09/09/1968 | 869775 | 05/20/1969 | 29, 32 |
| BURGER KING | Registered | 77/128236 | 03/12/2007 | 3355280 | 12/18/2007 | 43 |
| BURGER KING & Crescent Design | Registered | 75/655962 | 03/08/1999 | 2428846 | 02/13/2001 | 42 |

| Trademark | Status | Application Number | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|---|
| BURGER KING & Crescent Design | Registered | 76/468010 | 11/12/2002 | 2755927 | 08/26/2003 | 43 |
| BURGER KING & Hamburger Design | Registered | 75/437867 | 02/20/1998 | 2262585 | 07/20/1999 | 14, 25 |
| BURGER KING & Hamburger Design | Registered | 72/328416 | 05/27/1969 | 901311 | 10/20/1970 | 42 |
| BURGER KING & Hamburger Design (Color, Red & Orange) | Registered | 73/076655 | 02/09/1976 | 1057250 | 01/25/1977 | 42 |
| BURGER KING & Hamburger Refresh Design | Registered | 88/896710 | 05/01/2020 | 6397840 | 06/22/2021 | 29, 30, 43 |
| BURGER KING & Hamburger Refresh Design (color) | Registered | 88/896712 | 05/01/2020 | 6397841 | 06/22/2021 | 29, 30, 43 |
| BURGER KING YOUR WAY & Hamburger Refresh | Registered | 90/393367 | 12/18/2020 | 6702821 | 04/12/2022 | 43 |
| HAVE IT YOUR WAY | Registered | 72/413798 | 01/26/1972 | 961016 | 06/12/1973 | 30, 42 |
| HAVE IT YOUR WAY (Stylized) | Registered | 73/070797 | 12/04/1975 | 1081348 | 01/03/1978 | 42 |
| HOME OF THE WHOPPER | Registered | 72/098429 | 06/06/1960 | 782990 | 01/05/1965 | 42 |
| KING JR | Registered | 86/824915 | 11/18/2015 | 5392316 | 01/30/2018 | 29, 30, 43 |
| WHOPPER | Registered | 72/306089 | 09/09/1968 | 899775 | 09/29/1970 | 29 |
| WHOPPER | Registered | 77/819630 | 09/03/2009 | 3736973 | 01/12/2010 | 30 |
| WHOPPER | Registered | 77/792219 | 07/29/2009 | 3736954 | 01/12/2010 | 43 |

19.     The registration of the Marks are currently in full force and effect, and BKC has given notice to the public of the registration of the Marks as provided in 15 U.S.C. § 1111.

20.     Pursuant to franchise agreements between BKC and its franchisees, including Counter-Defendants, BKC grants its franchisees a limited license and authority to use and display the Marks, but only in such manner and at such locations and times as are expressly authorized by BKC.

21.     In no event is a franchisee authorized to use the Marks after the expiration of termination of its franchise. Such unauthorized use is expressly prohibited under the terms of the BKC franchise agreements, including the Counter-Defendants' agreements with BKC.

22.     BKC and its franchisees have spent many millions of dollars in the United States and abroad advertising and promoting BURGER KING® restaurants, services, and products.

23.     The substantial investment made in the Marks has resulted in valuable goodwill for the Marks in the United States and elsewhere and for the restaurants, products, and services bearing those Marks. BKC's products and services have met with popular approval and, as a result of BKC's extensive sales, advertising, promotion, and publicity, the public throughout the world is familiar with the Marks. The products and services associated with the Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with BKC.

**B.     The Burger King System**

24.     BKC has developed a comprehensive restaurant operating system (the "System") for all BKC franchisees worldwide in order to protect the image of the BURGER KING® restaurants and to ensure uniform, high-quality standards. The detailed "Brand Standard and Procedures" of the System are set forth in BKC's Operating Standards Manual (the "OPS Manual").

25.     Every BKC franchisee is required by its agreement to operate its licensed restaurant in accordance with the OPS Manual. The OPS Manual sets forth in detail the mandatory BURGER

KING® restaurant operating standards, specifications, and procedures, including rules governing areas such as food preparation, handling, cleanliness, health, sanitation, quality, and speed of service. In addition to these strict quality, service, and cleanliness requirements, the OPS Manual prescribed specified training procedures to ensure that these requirements are met. The OPS Manual contains confidential BKC information, which a franchisee is permitted to have only during the term of the franchise agreement.

26.     BKC offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards. This enables BKC to safeguard the integrity of BURGER KING® restaurants, the System, and the Marks.

27.     Integral to BKC's compliance and assistance program are period inspections and consultation undertaken by personnel specially trained to observe and advise in all areas of restaurant operating procedure.

28.     As a result of its substantial expenditures of money and effort in developing and implementing the System, BKC has established a high reputation and positive image with the public as to the quality of products and services available at BURGER KING® restaurants, which reputation and image have been, and continue to be, valuable assets of BKC. BKC strives to maintain that reputation through its careful selection of franchise owners, facilities and locations, and its careful supervision over the manner and quality of its restaurant service.

**C.     <u>Relevant Facts</u>**

29.     On or about June 1, 2018, Counter-Defendants acquired approximately 66 BURGER KING® restaurants from a prior BURGER KING® franchisee.

30.     Ten of those restaurants, specifically BK #82, BK #307, BK #1684, BK #2993, BK #3697, BK #5049, BK #5557, BK #6621, BK #9360, and BK #17461 (the "Restaurants"), are the

subject of this Counterclaim.

31.    By way of background, there are two sets of circumstances relevant to this Counterclaim. First, certain of the Restaurants are the subject of Notices of Default and subsequent termination for failure to meet remodel deadlines as outlined in the parties' agreements. Those restaurants include BK #82, BK #1684, BK #5557, BK #6621, and BK #17461. Second, certain other of the Restaurants have expired agreements, and yet despite the expiration of same, Counter-Defendants fail to cease operations and close the restaurants. Those restaurants include BK #307, BK #2993, BK #3697, BK #5049, and BK #9360. The circumstances of both are set forth below.

### 1.    The Parties' Agreements and Remodel Deadlines

32.    As a result of Counter-Defendants' acquisition of the 66 BURGER KING® restaurants from a prior BURGER KING® franchisee, CBA and CBB each procured five (5) franchise agreements, for a total of ten (10) locations that are relevant this lawsuit, pursuant to which each acquired the right to own and operate the Restaurants (the "Franchise Agreements").

33.    Specifically, on June 1, 2018, CBA executed BURGER KING® Franchise Agreements to own and operate BK #1684, BK #5557, and BK #6621 for the balance of the terms in the prior franchisees' franchise agreements, and CBB executed BURGER KING® Franchise Agreements to own and operate BK #82, BK #2993, and BK #17461 for the balance of the terms in the prior franchisee's franchise agreements.

34.    Additionally, as part of the acquisition, on June 1, 2018, CBA was specifically assigned the BURGER KING® Franchise Agreements from the prior franchisees for BK #307 and BK #5049, and CBB was specifically assigned the BURGER KING® Franchise Agreements from the prior franchisee for BK #3697 and BK #9360.

35.    Pursuant to the terms of the Franchise Agreements, Counter-Defendants' had

certain remodel obligations for the Restaurants that were set forth therein. The remodel deadlines were relevant to Counter-Defendants' right to successor locations as the Franchise Agreements expired and/or otherwise has fixed remodel deadlines.

36.     Specifically, pursuant to Section 17.B.(4) of the Franchise Agreements, in order to be eligible for a Successor Franchise Agreement, the Franchise Agreements require that:

> Franchisee shall have completed, not more than three (3) years and not less than three (3) months prior to the expiration of the Term of this Agreement, the improvements, alterations, remodeling or rebuilding of the interior and exterior of the Franchised Restaurant so as to reflect the then Current Image of BURGER KING Restaurants, pursuant to such plans and specifications as BKC reasonably approves.

37.     The Franchise Agreements further state that Counter-Defendants would be in default under the terms and conditions of the Franchise Agreements if Counter-Defendants failed to make all improvements, alterations, or remodelings as may be determined by BKC to be reasonably necessary to reflect BKC's current image.

38.     Moreover, simultaneous with the execution of five of the Franchise Agreements, CBA executed Deferred Remodel Addenda to the Franchise Agreements for BK #1684, BK #5557, and BK #6621, and CBB executed Deferred Remodel Addenda to the Franchise Agreements for BK #82 and BK #17461 (each a "Deferred Remodel Addendum," and collectively the "Deferred Remodel Addenda"). The Deferred Remodel Addenda modified certain remodel deadlines in the Franchise Agreements.

39.     Specifically, as set forth in paragraph 2 of the Deferred Remodel Addenda, the deadline to remodel BK #82 and BK #6621 was November 30, 2018, the deadline to remodel BK #1684 was November 30, 2019, and the deadline to remodel BK #5557 and BK #17461 was November 30, 2020.

40.     The Restaurants' number, location, Franchise Agreement commencement date,

Franchise Agreement expiration date, and remodel deadlines are set forth below:

| BKC Restaurant No. | Location | Commencement Date of Franchise Agreement | Expiration Date of Franchise Agreement | Remodel Deadline in Franchise Agreement |
|---|---|---|---|---|
| 82 | 3796 Congress Ave. South Lake Worth, FL 33461 | June 1, 2018 | September 18, 2032 | November 30, 2018 |
| 307 | 1801 North Ashley Street Valdosta, GA 31602 | June 10, 2002 | June 9, 2022 | March 9, 2022 |
| 1684 | 198 W. James Lee Blvd. Crestview, FL 32536 | June 1, 2018 | May 13, 2027 | November 30, 2019 |
| 2993 | 9031 Old Dixie Highway Lake Park, FL 33403 | June 1, 2018 | February 28, 2023 | November 28, 2022 |
| 3697 | 8175 Glades Road Boca Raton, FL 33434 | September 19, 2012 | May 20, 2023 | February 20, 2023 |
| 5049 | 11213 Front Beach Road Panama City Beach, FL 32407 | June 30, 2002 | June 29, 2022 | March 29, 2022 |
| 5557 | 751 Hwy 98 East Destin, FL 32451 | June 1, 2018 | May 18, 2027 | November 30, 2020 |
| 6621 | 1303 US Hwy 331 South Defuniak Springs, FL 32435 | June 1, 2018 | November 1, 2029 | November 30, 2018 |
| 9360 | 1721 Belvedere Road West Palm Beach, FL 33406 | September 18, 2012 | December 12, 2023 | September 12, 2023 |
| 17461 | 1760 S. Military Trail West Palm Beach, FL 33415 | June 1, 2018 | September 29, 2029 | November 30, 2020 |

41.    Additionally, CBH, Parent CBH, and Baugher irrevocably and unconditionally guaranteed the performance of each and every obligation of CBB under the Franchise Agreements, pursuant to a Conditional Consent to Assignment of Franchise Agreements and Leases dated June 1, 2018, as well as Owner Guarantees with respect to particular locations.

42.    Specifically, in addition to the Conditional Consent to Assignment of Franchise Agreements and Leases, on June 1, 2018, CBH, Parent CBH, and Baugher entered Owner's Guarantees for the following locations: BK #82, BK #1684, BK# 2993, BK#5557, BK #6621,  and BK # 17461.

**2.    The 2018 Agreement**

43.    Also in June 2018, as part of the acquisition, CBH and its parent company entered into an Area Development and Remodeling Agreement (the "2018 Agreement") with BKC.

44.     The 2018 Agreement provided, among other things, CBH with the non-exclusive right to develop, open and operate additional BURGER KING® restaurants in the Territory (as defined in the 2018 Agreement) pursuant to a development schedule within the 2018 Agreement.

45.     In addition, the 2018 Agreement reiterated the remodel deadlines set forth in the Franchise Agreements for certain of the Restaurants that are the subject of this Counterclaim, including BK # 82, BK #1684, BK #2993, BK #5557, BK #6621, and BK #17461.

46.     The purpose of including remodel deadlines in the 2018 Agreement was to allow BKC to declare a default of the 2018 Agreement if the remodel deadlines set forth in the Franchise Agreements were not met.

### 3.     The 2019 Agreement

47.     Thereafter, on December 5, 2019, the parties entered into a Remodel Agreement (the "2019 Agreement"). The 2019 Agreement was a system-wide initiative, which offered franchisees certain incentives to complete Burger King of Tomorrow Remodels ("BKOT Remodels") at certain BURGER KING® restaurants. Those incentives included reduced royalties, among others.

48.     The 2019 Agreement provided remodel deadlines for certain of Counter-Defendants' Restaurants, including BK #82, BK #1684, BK #2993, BK #5049, BK #5557, BK #6621, and BK #17461, if Counter-Defendants proceeded with the BKOT Remodel program. The relevant BKOT Remodel deadlines are set forth below:

| BKC Restaurant No. | 2019 Extended Remodel Deadline |
|---|---|
| 82 | December 31, 2020 |
| 1684 | December 31, 2021 |
| 2993 | December 31, 2022 |
| 5049 | December 31, 2022 |

| BKC Restaurant No. | 2019 Extended Remodel Deadline |
|:---:|:---:|
| 5557 | December 31, 2022 |
| 6621 | December 31, 2022 |
| 17461 | December 31, 2022 |

49.     Then, in September 2020, due to the COVID-19 pandemic, BKC announced that all remodel obligations that were due in 2020 would be extended into 2021. Accordingly, the updated remodel deadline for BK #82 was September 30, 2021.

50.     Despite the COVID-19 extension, Counter-Defendants did not proceed with the BKOT Remodel program with regard to BK #82, BK #1684, BK #2993, BK #5049, BK#5557, BK #6621, and BK #17461 and failed to meet the BKOT Remodel deadlines set forth in the 2019 Agreement, including the postponed deadline due to the COVID-19 pandemic.

51.     The 2019 Agreement expired on December 31, 2021.

52.     Thus, because Counter-Defendants chose not to proceed with the BKOT Remodel program, the deadlines set forth in the Franchise Agreements and Deferred Remodel Addenda, as set forth above, applied to Counter-Defendants.

53.     Put simply, the 2019 Agreement did not supplant the remodel obligations and deadlines set forth in the Restaurants' Franchise Agreements and Deferred Remodel Addenda.

54.     Thereafter, the parties attempted to resolve the issues with regard to the remodels, but were ultimately unable to do so.

**4.      Notices of Default for BK #82, BK #1684, BK #5557, BK #6621, and BK #17461**

55.     Ultimately, Counter-Defendants failed to meet the remodel deadlines set forth in the Deferred Remodel Addenda for BK #82, BK #1684, BK #5557, BK #6621, and BK #17461.

56.     Thus, on September 11, 2023, with respect to BK #82 and BK #17461, and on

November 22, 2023, with respect to BK #1684, BK #5557, and BK #6621, BKC issued Notices of Default to Counter-Defendants (the "Notices of Default") for their failure to meet their remodel obligations under the Deferred Remodel Addenda.

57.     The Notices of Default provided Counter-Defendants with thirty (30) days from delivery of the Notices of Default to cure the remodel defaults.

58.     Counter-Defendants failed to cure the remodel defaults within the applicable cure period.

59.     Accordingly, by letter dated November 21, 2023, BKC sent Counter-Defendants a letter confirming that the Franchise Agreements for BK #82 and BK #17461 had been terminated, and by letter dated January 3, 2024, BKC sent Counter-Defendants a letter confirming that the Franchise Agreements for BK #1684, BK #5557 and BK #6621 had been terminated, and demanding that Counter-Defendants comply with their post-termination obligations under the Franchise Agreements (the "Confirmation of Termination and Demand for Compliance").

60.     As of the date of the filing of this Counterclaim and in violation of the Franchise Agreements, Counter-Defendants continue to hold themselves out to the public as owning and operating genuine and authorized BURGER KING® restaurants by continuing to use the Marks at BK #82, BK #1684, BK #5557, BK #6621, and BK #17461.

61.     In so doing, Counter-Defendants are infringing upon the Marks and breaching their explicit obligations under the Franchise Agreements.

**5.      Expiration of Franchise Agreements for BK #307, BK#2993, BK #3697, BK #5049, and BK #9360**

62.     Additionally, while the parties were negotiating resolution of the issues relating to the remodels, certain of the Restaurants' Franchise Agreements expired. Those restaurants included BK #307, BK #2993, BK #3697, BK #5049, and BK #9360.

63.     On November 21, 2023, BKC sent Notices of Non-Successor of BURGER KING®

Agreement to Counter-Defendants for BK #2993, BK #3697, and BK #9360, and on January 3,

2024, BKC sent Notices of Non-Successor BURGER KING® Agreement to Counter-Defendants

for BK #307, and BK #5049 (the "Non-Successor Notices").

64.     In pertinent part, the Non-Successor Notices stated that: (1) each Franchise

Agreement had expired; and/or (2) Counter-Defendants failed to complete remodels by the

deadline set forth in the Franchise Agreements, and therefore, pursuant to Section 17.B.(4) of the

Franchise Agreements, the Counter-Defendants had no right to renew or obtain a Successor

Franchise Agreement, and that the prior Franchise Agreements had expired.

65.     Additionally, Counter-Defendants failed to give the requisite notice of their intent

to renew the Franchise Agreements for BK #307, BK #2993, BK #3697, BK #5049, and BK #9360,

as required by Section 17 of the Franchise Agreements.

66.     Accordingly, Counter-Defendants had no right to renew the Franchise Agreements

for BK #307, BK #2993, BK #3697, BK #5049, and BK #9360, and the Franchise Agreements for

each location expired. Counter-Defendants were therefore required to close the locations upon

receipt of the Non-Successor Notice and comply with all post-termination covenants set forth in

the Franchise Agreements.

67.     Despite BKC's demands, Counter-Defendants continue to hold themselves out to

the public as owning and operating genuine and authorized BURGER KING® restaurants by

continuing to use the Marks at the locations.

68.     In so doing, Counter-Defendants are infringing upon the Marks and breaching their

explicit obligations under the Franchise Agreements.

69.     BKC has demanded that Counter-Defendants comply with their post-termination

obligations, but Counter-Defendants have refused and continue to unlawfully operate the Restaurants without a Franchise Agreement.

### D.    <u>Obligations Upon Termination and Expiration of the Franchise Agreements</u>

70.    Terminated and expired franchisees, such as Counter-Defendants, are prohibited from identifying themselves as either current or former BURGER KING® franchisees, from using any of BKC's trade secrets, promotional materials, the Marks, or any mark confusingly similar.

71.    Terminated and expired franchisees are further required, upon termination or expiration of their BURGER KING® franchise agreement(s), to immediately make such removals or changes in signs and the building as BKC shall request so as to effectively distinguish the building and premises from its former appearance and from any other BURGER KING® restaurant.

72.    In light of these obligations under the Franchise Agreements, Counter-Defendants cannot continue to hold themselves out to the public as operating genuine and authorized BURGER KING® restaurants by continuing to use the Marks at the Restaurants subsequent to the Franchise Agreements' termination or expiration.

73.    In so doing, Counter-Defendants are infringing upon the Marks and breaching their explicit obligations under the Franchise Agreements.

### E.    <u>Likelihood of Consumer Confusion and Deception</u>

74.    Despite the termination and expiration of the Franchise Agreements, Counter-Defendants have not tendered to BKC or removed all BURGER KING® signs, logos, menu boards, posters, translights, uniforms, plates, cups, tray liners, and other items bearing the Marks, name, symbols, or slogans, or which are otherwise identified with BURGER KING® restaurants and are located at the Restaurants.

75.     Counter-Defendants' continued use and display of the Marks or any items associated with the BURGER KING® name, symbols or slogans at the Restaurants is without BKC's license or consent.

76.     Upon seeing the familiar Marks, through Counter-Defendants' unauthorized display thereof, consumers will be deceived into concluding that the Restaurants are sponsored or endorsed by BKC, and bear the Marks pursuant to BKC's authority and permission.

77.     Such impressions are calculated to and will have a material influence on customers' purchasing decisions, as well as BKC's goodwill, reputation, and appeal.

78.     By reason of the foregoing, BKC has suffered damages in an amount presently unknown yet substantial.

79.     BKC no longer is the source or sponsor of the Restaurants and does not endorse said Restaurants, or the products and services provided therein, has not authorized Counter-Defendants to use the Marks to identify the terminated or expired franchise facilities, products, or services and has protested expressly against such use.

80.     By virtue of termination and expiration of the Franchise Agreements, BKC is unable to control the nature and quality of the goods and services that Counter-Defendants provide at the Restaurants.

81.     BKC will suffer serious, immediate, and irreparable harm if Counter-Defendants' willful infringement of the Marks at the Restaurants is not immediately enjoined. BKC's goodwill and reputation will suffer drastically by virtue of the public's identification of BKC with the management and operation of Restaurants.

82.     BKC exercises strict quality control over every phase in the marketing of BURGER KING® products and services, from specification of ingredients, to the supervision of food

preparation and handling, to the maintenance of strict standards as to cleanliness, health, sanitation, and quality of service. The carefully nurtured image which BKC now enjoys will be irretrievably injured by any association with the Restaurants, which are no longer subject to BKC's control and supervision.

83.    Counter-Defendants' sale of products and services under the Marks at the Restaurants poses an immediate threat to the distinct, exclusive image BKC has created at great expense for its franchisees. BURGER KING® restaurants, services, and products are known by the Marks which are emblematic of their distinctive source. BURGER KING® restaurants enjoy a special appeal to consumers which will be diluted by the existence of infringing restaurants with products and services bearing the distinctive Marks. The intangible, but commercially indispensable, value that BURGER KING® restaurants now enjoy will be severely undermined by the operation of the Restaurants, which make authorized use of the Marks.

84.    Consumer confusion as to the source or sponsorship of the Restaurants bearing the Marks will be attended not only by an inevitable loss of product distinctiveness, image, and goodwill, but also will cause a diversion from sales from BKC. The economic injury to BKC resulting from such diversion is incalculable, and as such, is an additional source of irreparable harm.

85.    All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

### <u>COUNT I – LANHAM ACT INFRINGEMENT</u>
**(Against All Counter-Defendants)**

86.    BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

87.    Counter-Defendants' acts constitute infringement of BKC's registered trademarks

and service marks in violation of Section 32 of Lanham Act, 15 U.S.C. § 1114.

### COUNT II – LANHAM ACT FALSE DESIGNATIONS
**(Against All Counter-Defendants)**

88.     BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

89.     Counter-Defendants' acts constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### COUNT III – COMMON LAW TRADEMARK INFRINGEMENT
**(Against All Counter-Defendants)**

90.     BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

91.     Counter-Defendants' acts constitute unlawful trademark and service mark infringements under the common law.

### COUNT IV – COMMON LAW UNFAIR COMPETITION
**(Against All Counter-Defendants)**

92.     BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

93.     Counter-Defendants' acts constitute unfair competition under the common law.

### COUNT V – BREACH OF FRANCHISE AGREEMENT FOR BK #82
**(Against CBB)**

94.     BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

95.     CBB has not complied with the post-termination obligations in the Franchise Agreement for BK #82 requiring, among other things, that CBB immediately cease and desist from use of all Marks at BK #82.

96.     These breaches have directly and proximately caused loss and damage to BKC.

## COUNT VI – BREACH OF FRANCHISE AGREEMENT FOR BK #2993
### (Against CBB)

97.     BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

98.     CBB has not complied with the post-termination obligations in the Franchise Agreement for BK #2993 requiring, among other things, that CBB immediately cease and desist from use of all Marks at BK #2993.

99.     These breaches have directly and proximately caused loss and damage to BKC.

## COUNT VII – BREACH OF FRANCHISE AGREEMENT FOR BK #3697
### (Against CBB)

100.     BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

101.     CBB has not complied with the post-termination obligations in the Franchise Agreement for BK #3697 requiring, among other things, that Counter-Defendants immediately cease and desist from use of all Marks at BK #3697.

102.     These breaches have directly and proximately caused loss and damage to BKC.

## COUNT VIII – BREACH OF FRANCHISE AGREEMENT FOR BK #17461
### (Against CBB)

103.     BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

104.     CBB has not complied with the post-termination obligations in the Franchise Agreement for BKC #17461 requiring, among other things, that CBB immediately cease and desist from use of all Marks at BK #17461.

105.    These breaches have directly and proximately caused loss and damage to BKC.

### COUNT IX – BREACH OF FRANCHISE AGREEMENT FOR BK #9360
**(Against CBB)**

106.    BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

107.    CBB has not complied with the post-termination obligations in the Franchise Agreement for BK #9360 requiring, among other things, that CBB immediately cease and desist from use of all Marks at BK #9360.

108.    These breaches have directly and proximately caused loss and damage to BKC.

### COUNT X – BREACH OF FRANCHISE AGREEMENT FOR BK #307
**(Against CBA)**

109.    BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

110.    CBA has not complied with the post-termination obligations in the Franchise Agreement for BK #307 requiring, among other things, that CBA immediately cease and desist from use of all Marks at BK #307.

111.    These breaches have directly and proximately caused loss and damage to BKC.

### COUNT XI – BREACH OF FRANCHISE AGREEMENT FOR BK #1684
**(Against CBA)**

112.    BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

113.    CBA has not complied with the post-termination obligations in the Franchise Agreement for BK #1684 requiring, among other things, that CBA immediately cease and desist from use of all Marks at BK #1684.

114.    These breaches have directly and proximately caused loss and damage to BKC.

### COUNT XII – BREACH OF FRANCHISE AGREEMENT FOR BK #5557
**(Against CBA)**

115.    BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

116.    CBA has not complied with the post-termination obligations in the Franchise Agreement for BK #5557 requiring, among other things, that CBA immediately cease and desist from use of all Marks at BK #5557.

117.    These breaches have directly and proximately caused loss and damage to BKC.

### COUNT XIII – BREACH OF FRANCHISE AGREEMENT FOR BK #6621
**(Against CBA)**

118.    BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

119.    CBA has not complied with the post-termination obligations in the Franchise Agreement for BK #6621 requiring, among other things, that CBA immediately cease and desist from use of all Marks at BK #6621.

120.    These breaches have directly and proximately caused loss and damage to BKC.

### COUNT XIV – BREACH OF GUARANTEES
**(Against CBH, Parent CBH, and Baugher)**

121.    BKC re-alleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

122.    Pursuant to the June 1, 2018 Conditional Consent to Assignment and certain Owner's Guarantees with respect to particular locations, CBH, Parent CBH, and Baugher, irrevocably and unconditionally guaranteed the performance of all obligations of CBA and CBB to BKC under the Franchise Agreements.

123.    CBH, Parent CBH, and Baugher have breached the guarantees by failing to comply

33

with the post-termination obligations in the Franchise Agreements for the Restaurants requiring, among other things, that Counter-Defendants immediately cease and desist from use of all Marks at the Restaurants.

124.     These breaches have directly and proximately caused loss and damage to BKC.

## DEMAND FOR ATTORNEYS' FEES AND COSTS

The Franchise Agreements at issue in this litigation provide that the prevailing party is entitled to recover its attorneys' fees and costs. BKC hereby demands that it be reimbursed by Counter-Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

## REQUEST FOR RELIEF

WHEREFORE, Burger King Company LLC demands judgment against Counter-Defendants Consolidated Burger A, LLC, Consolidated Burger B, LLC, Consolidated Burger Holdings, LLC, Parent Consolidated Burger Holdings, LLC, and Lee Baugher for:

1.     Preliminary and permanent injunctions enjoining Counter-Defendants,  and all persons acting on their behalf, in concert with, or under their control, from:

(a)     manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Marks, or any colorable imitation thereof at the Restaurants;

(b)     displaying or using any of the Marks to advertise or promote the sale of, or to identify, the Restaurants, or any product or service provided therein; and

(c)     making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe the Restaurants and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or

connected with, or licensed, sponsored, authorized, or approved by BKC.

2.      Preliminary and permanent injunctions directing Counter-Defendants and all persons acting on their behalf, in concert with them, or under their control to:

(a)      recall and deliver to BKC all signs, banners, labeling, packaging, advertising, promotional display and point-of-purchase materials which bear, or make reference to, any of the Marks, or any colorable imitation of the Marks at the Restaurants;

(b)      recall and deliver up to BKC on all copies and editions of the Manual that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto and all other materials containing restaurant operating instructions, restaurant business practices, or plans of BKC to the extent that there are any at the Restaurants;

(c)      allow BKC, at a reasonable time, to enter the premises of the Restaurants and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from its appearance as a BURGER KING® restaurant, and;

(d)      account and pay over to BKC all gains, profits, and advantages derived by them from any trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117 and by the controlling principles of common law.

3.      Money damages, plus three times additional actual damages BKC has sustained by reason of Counter-Defendants' trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

4.      Punitive damages because of the willful nature of Counter-Defendants' actions;

5.      Pre-judgment interest and BKC's reasonable attorneys' fees incurred in protecting

its rights in this action in accordance with the terms of the Franchise Agreements, and because of

the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

6.     An order requiring Counter-Defendants from owning, operating, or having any

interest in any hamburger business as defined in the Franchise Agreements, within a two-mile

radius of the Restaurants for a one-year period;

7.     Compensatory damages, lost profits, and attorneys' fees and costs against Counter-

Defendants' due to their breaches of the Franchise Agreements;

8.     An order directing Counter-Defendants to file with the Court, and to serve on

BKC's counsel within ten days after service of any injunction or order issued herein, or within

such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth

in detail the manner in which they have complied with such injunction or order;

9.     All attorneys' fees, costs, disbursements, and expenses of this action; and

10.    All such other relief as this Court may deem just and proper.

> VENABLE LLP
> *Attorneys for Burger King Company LLC*
> 100 Southeast Second Street
> Miami Tower, Suite 4400
> Miami, Florida 33131
> Telephone: (305) 349-2300
> Facsimile: (305) 349-2310
>
> By:  /s/ Michael D. Joblove
> Michael D. Joblove
> Florida Bar No.: 354147
> MDJoblove@Venable.com
> Elizabeth McIntosh
> Florida Bar No. 1011555
> EGMcIntosh@Venable.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on January 5, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ Michael D. Joblove
Attorney

Case No. 23-cv-24419

<u>**SERVICE LIST**</u>
Case No. 23-cv-24419
*Consolidated Burger Holdings, LLC, et al. v. Burger King Corporation*

Michael D. Joblove, Esq.
MDJoblove@Venable.com
Elizabeth McIntosh
EGMcIntosh@Venable.com
VENABLE LLP
100 Southeast Second Street
Miami Tower, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Attorneys for Burger King Company LLC*


Robert Zarco, Esq.
rzarco@zarcolaw.com
Himanshu M. Patel, Esq.
hpatel@zarcolaw.com
Michael D. Braunstein
mbraunstein@zarcolaw.com
ZARCO EINHORN SALKOWSKI, P.A.
One Biscayne Tower
2 S. Biscayne Blvd., Suite 3400
Miami, Florida 33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428
*Counsel for Plaintiffs*